T.C. Memo. 2009-87

UNITED STATES TAX COURT

JUSTIN W. HANSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16247-07.                    Filed April 28, 2009.

<u>Michael B. Kratville</u>, for petitioner.

<u>J. Anthony Hoefer</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of
$25,998 in, and an accuracy-related penalty of $5,200 under

section 6662(a)[1] on, petitioner's Federal income tax (tax) for his taxable year 2004.

The issue remaining for decision is whether petitioner is entitled for his taxable year 2004 to exclude from gross income under section 104(a)(2) $100,000 of the total of $120,000 that he received in settlement of several claims against his former employer. We hold that he is not.

FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are so found.

At the time petitioner filed the petition, he resided in Indiana.

From 2000 until 2003, Martin Marietta Materials, Inc. (Martin Marietta), employed petitioner at a mine near Weeping Water, Nebraska (Weeping Water mine).

On a date in early July 2003 before July 7, petitioner's supervisor Ray Fleischman (Mr. Fleischman) assaulted petitioner on a job site by throwing him to the ground and pushing his face into limestone powder. (We shall refer to the assault that took place in early July 2003 as the mine assault.) Petitioner sustained some bruises as a result of the mine assault. Peti-

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

tioner reported that assault to the plant manager at the Weeping Water mine.

On July 7, 2003, Mr. Fleischman engaged in an unsafe working practice (Mr. Fleischman's unsafe practice) while on duty at the Weeping Water mine. Petitioner reported Mr. Fleischman's unsafe practice to the assistant plant manager at that mine and to the Martin Marietta ethics hotline (Martin Marietta hotline).[2]

On July 11, 2003, Mr. Fleischman appeared at petitioner's home, threatened him, and assaulted him because petitioner had reported Mr. Fleischman's unsafe practice to the assistant plant manager at the Weeping Water mine and had called the Martin Marietta hotline. (We shall refer to the assault that took place on July 11, 2003, as the home assault.) Petitioner sustained some bruises and a small cut on his foot as a result of the home assault. Petitioner called the police to report the home assault. He also reported that assault to the plant manager at the Weeping Water mine and to the Martin Marietta hotline.

On July 23, 2003, petitioner called the Mine Safety and Health Administration (MSHA) to complain about Mr. Fleischman's unsafe practice. MSHA sent an investigator to the Weeping Water mine to investigate petitioner's complaint. Thereafter, that

_____

[2]During 2003, the Martin Marietta hotline was a company service that allowed its employees to report on an anonymous basis to Martin Marietta's corporate management safety concerns and other work-related issues.

investigator issued a citation to Martin Marietta for a violation of Federal mine safety regulations concerning work on electrically powered equipment.

Because of the home assault, on July 24, 2003, petitioner applied to the District Court of Cass County, Nebraska (Cass County district court), for a so-called harassment protection order (protection order) against Mr. Fleischman, which that court granted on the same date. On July 28, 2003, the Cass County district court granted Mr. Fleischman a protection order against petitioner.

On July 29, 2003, Martin Marietta terminated petitioner's employment at the Weeping Water mine on the ground that petitioner was unable to communicate with fellow employees.

On August 23, 2003, petitioner filed a discrimination complaint (petitioner's Mine Act discrimination complaint) against Martin Marietta with MSHA under section 105(c) of the Federal Mine Safety and Health Act of 1977 (Mine Act), Pub. L. 91-173, sec. 105(c), 83 Stat. 753 (current version at 30 U.S.C. sec. 815(c) (2006)).[3]  An MSHA investigator interviewed peti-

---

[3]Petitioner's Mine Act discrimination complaint is not part of the record in this case.

Sec. 105(c) of the Mine Act, 30 U.S.C. sec. 815(c) (2006), prohibits a mine operator from firing or discriminating against, inter alia, an employed miner who has made a complaint against the employer under any provision of the Mine Act, including, inter alia, complaints of alleged safety violations at a covered
(continued...)

tioner regarding that complaint. During that interview, petitioner indicated that he was seeking from Martin Marietta reinstatement to the position that he had held at that company before it terminated his employment on July 29, 2003, and all moneys and benefits to which he would have been entitled if Martin Marietta had not terminated his employment.

Because of petitioner's Mine Act discrimination complaint, the U.S. Secretary of Labor (Secretary of Labor) filed on petitioner's behalf a discrimination complaint (petitioner's FMSHRC discrimination complaint) against Martin Marietta with the Federal Mine Safety and Health Review Commission (FMSHRC).[4] (We shall refer collectively to petitioner's Mine Act discrimination complaint and petitioner's FMSHRC discrimination complaint as the MSHA complaints.)

On September 10, 2003, petitioner filed a so-called charge of discrimination against Martin Marietta with the Nebraska Equal Opportunity Commission (Nebraska discrimination complaint).[5] In

---

[3](...continued)
mine site.

[4]Petitioner's FMSHRC discrimination complaint is not part of the record in this case.

[5]In the Nebraska discrimination complaint, petitioner requested that that complaint also be filed with the Federal Equal Employment Opportunity Commission (FEEOC). In support of his complaint to the FEEOC, petitioner relied on Title VII of the Civil Rights Act of 1964, Pub. L. 88-352, tit. VII, 78 Stat. 253 (current version at 42 U.S.C. secs. 2000e-2000e-17 (2006)), which
(continued...)

the Nebraska discrimination complaint, petitioner alleged that Martin Marietta had discriminated against him based on his sex and his status as a whistleblower. Petitioner alleged that the legal bases for the claims asserted in the Nebraska discrimination complaint were sections 48-1104[6] and 48-1114(3)[7] of the Nebraska Fair Employment Practice Act (Nebraska FEPA).

On December 1, 2003, an administrative law judge entered an order (temporary reinstatement order) with respect to petitioner's FMSHRC discrimination complaint. In that order, the administrative law judge granted petitioner temporary economic reinstatement to his former position at Martin Marietta, which was to be effective as of the date of that order. The temporary reinstatement order provided that it would remain in effect until the FMSHRC resolved the claims that the Secretary of Labor

---

[5](...continued) addresses discrimination in employment based on "race, color, religion, sex, or national origin", 42 U.S.C. sec. 2000e-2(a) (2006).

[6]Sec. 48-1104 of the Nebraska FEPA prohibits, inter alia, an employer from discharging, failing to hire, or harassing an employee or applicant for employment on the basis of "race, color, religion, sex, disability, marital status, or national origin". Neb. Rev. Stat. Ann. sec. 48-1104 (West 2008).

[7]Sec. 48-1114(3) of the Nebraska FEPA prohibits, inter alia, an employer from discriminating against an employee for opposing or refusing to carry out an act that is unlawful under either Federal or State law. Neb. Rev. Stat. Ann. sec. 48-1114(3) (West 2008).

had asserted on petitioner's behalf in petitioner's FMSHRC discrimination complaint.[8]

On February 18, 2004, petitioner and Martin Marietta entered into an agreement entitled "**SETTLEMENT AND GENERAL RELEASE AGREEMENT**" (settlement agreement) pursuant to which Martin Marietta agreed to pay to petitioner a total of $120,000 (settlement amount). The settlement agreement provided in pertinent part:

> This Settlement And General Release Agreement ("Agreement") is made on this 18th day of February 2004, by and between Justin Hansen and Martin Marietta Aggregates, Martin Marietta Materials, Inc. and Martin Marietta Corporation (collectively referred to herein as "Martin Marietta Materials, Inc.").
>
> WHEREAS, Justin Hansen has filed complaints pending before the Federal Mine Safety and Health Review Commission under § 105(c) of the Federal Mine Safety and Health Act * * * (collectively referred to as "MSHA Complaints"); a complaint with the Nebraska Equal Opportunity Commission on September 8, 2003, * * * (hereinafter referred to as the "Nebraska Complaint"); and a grievance filed on or about August 1, 2003, alleging violation of the collective bargaining agreement between Martin Marietta Materials, Inc. and the International Union of Operating Engineers (hereinafter referred to as the "Grievance").[9]

---

[8]The temporary economic reinstatement that the administrative law judge granted petitioner required Martin Marietta to pay wages to petitioner "under the same terms as if his employment had not terminated on July 29, 2003". However, Martin Marietta was not required to reemploy petitioner at the Weeping Water mine or at any other Martin Marietta job site.

[9]No grievance that petitioner "filed on or about August 1, 2003" is part of the record in this case. (We shall refer to that grievance as the union grievance.)

WHEREAS, Martin Marietta Materials, Inc. has denied and continues to deny all of the allegations and claims made by Justin Hansen against Martin Marietta Materials, Inc.

WHEREAS, Justin Hansen and Martin Marietta Materials, Inc. now desire to: settle and resolve in full all disputes between them; to provide for the withdrawal and dismissal with prejudice of all complaints made by Justin Hansen against Martin Marietta Materials, Inc., including the MSHA Complaints, the Nebraska Complaint, and the Grievance; and to effect the release and discharge of all claims described in the general release contained herein:

NOW, THEREFORE, the Parties agree as follows:

1.    In consideration of the covenants contained herein, Martin Marietta Materials, Inc. shall pay to Justin Hansen the total sum of One Hundred Twenty Thousand Dollars ($120,000.00).  This sum is to be apportioned as follows:

a.    Twenty Thousand Dollars ($20,000) is attributable to Justin Hansen's claims for back wages, and such sum shall be subject to standard withholdings for taxes and shall be reported on a W2 Form.  This amount shall be paid directly to Justin Hansen on or before the Payment Date described in subparagraph 1(c) below.

b.    One Hundred Thousand Dollars ($100,000.00) is attributable to Justin Hansen's claims of emotional distress and his attorney's fees, and such sum shall be reported on a Form 1099 and shall not be subject to withholding.  This amount shall be paid jointly to Justin Hansen and Michael Kratville on or before the Payment Date described in subparagraph 1(c) below.

c.    They [sic] payments described in this paragraph 1 shall be made on or before the later of: (1) the tenth (10) day following the execution of the Agreement; or (2) the third (3rd) day following issuance of an order by Judge Bulluck dismissing the MSHA Complaints, including the dissolution of the temporary reinstatement order, and written confirmation of the

withdrawal and dismissal of the Nebraska Complaint and the Grievance.

2.    In consideration of the covenants contained herein, Justin Hansen * * * hereby releases, acquits and forever discharges Martin Marietta Materials, Inc., its masters, servants, principals, agents, officers, directors, employees, subsidiaries, parent or affiliated corporations and successors (collectively "Employer"), of and from any and all claims or causes of action arising under the Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Fair Labor Standards Act, the Federal Mine Safety and Health Act of 1977, the Nebraska Fair Employment Practice Act, and any other statute, regulation or ordinance of the United States or any state (including Nebraska) or subdivision thereof, or the common law or public policy of the United States or any state (including Nebraska) or subdivision thereof, and any and all other claims for liability, damages, losses, expenses, costs, and attorney fees, or pension or retirement or health insurance benefits (except for vested pension benefits, if any), of whatsoever nature and whether sounding in tort or contract or otherwise, which have arisen or might arise from the facts and circumstances forming the basis of the MSHA Complaints, the Nebraska Complaint, or the Grievance, or which have arisen or may arise from Justin Hansen's employment with Employer or the termination thereof.

3.    In consideration of the covenants herein, Justin Hansen agrees to waive any claim which he might have for reinstatement with Employer and further agrees that he will not hereafter apply for employment or accept employment with Employer.

4.    Justin Hansen acknowledges and agrees that he has consulted with his attorney in connection with the review and execution of this Agreement and that he has had adequate opportunity to do so.

5.    In further consideration of the aforesaid, Justin Hansen agrees to withdraw with prejudice the MSHA Complaints, the Nebraska Complaint, the Grievance, and any other related actions or charges against Employer as being fully compromised, settled and agreed, and further agrees not to institute or be a party to any future action against Employer or others in regard

to any of the foregoing.  The Parties agree to cause
Judge Bulluck to dismiss the MSHA Complaints with
prejudice, to cause the Nebraska Complaint to be dis-
missed with prejudice, and to cause the Grievance to be
dismissed with prejudice.

6.    The Parties acknowledge and agree that the
actions to be taken by third parties, including Judge
Bulluck, the Nebraska Equal Opportunity Commission, and
any party necessary to the dismissal of the Grievance
(including the International Union of Operating Engi-
neers and any assigned arbitrator), as described in
this Agreement, are indispensable prerequisites to
agreement in this matter and are essential elements of
this Agreement.  The Parties further agree to act in
good faith to ensure that the third parties identified
in this Agreement take the actions described in this
Agreement.  The Parties further agree that, should any
third party fail to take the actions described in this
Agreement, this Agreement shall be considered null and
void, and the Parties shall return to the status that
existed between them prior to the making of this Agree-
ment.

Pursuant to paragraph 1.a. of the settlement agreement, on
March 1, 2004, Martin Marietta paid petitioner $12,470, which was
equal to the $20,000 portion of the settlement amount that,
according to that agreement, was attributable to petitioner's
"claims for back wages" ($20,000 back wages award) less Federal
and State taxes withheld by Martin Marietta.  Pursuant to para-
graph 1.a. of the settlement agreement, Martin Marietta reported
the $20,000 back wages award in Form W-2, Wage and Tax Statement
(Form W-2), that it issued to petitioner for his taxable year
2004.

Pursuant to paragraph 1.b. of the settlement agreement,
Martin Marietta sent petitioner's attorney the $100,000 portion

of the settlement amount that, according to that agreement, was attributable to petitioner's "claims of emotional distress and his attorney's fees" ($100,000 emotional distress and legal fees award). On March 29, 2004, petitioner's attorney paid to petitioner a total of $67,230.03, which was equal to the $100,000 emotional distress and legal fees award less $32,769.97 of attorney's fees and costs. Pursuant to paragraph 1.b. of the settlement agreement, Martin Marietta reported the $100,000 emotional distress and legal fees award in Form 1099-MISC, Miscellaneous Income (Form 1099-MISC), that it issued to petitioner for his taxable year 2004.

Petitioner timely filed Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, for his taxable year 2004 (2004 return). In that return, petitioner included in gross income the $20,000 back wages award that Martin Marietta reported in Form W-2 that it issued to him for his taxable year 2004. Petitioner did not include in gross income in his 2004 return the $100,000 emotional distress and legal fees award that Martin Marietta reported in Form 1099-MISC that it issued to him for that taxable year.

Respondent issued to petitioner a notice of deficiency for his taxable year 2004 (2004 notice). In that notice, respondent determined, inter alia, that the $100,000 emotional distress and legal fees award is includible in petitioner's gross income.

OPINION

Petitioner has the burden of establishing that the determinations in the 2004 notice are wrong.  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Section 61(a) provides the following sweeping definition of the term "gross income":  "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived".  Not only is section 61(a) broad in its scope, <u>Commissioner v. Schleier</u>, 515 U.S. 323, 328 (1995), exclusions from gross income must be narrowly construed, <u>id.</u>

Section 104(a)(2) provides that gross income does not include:

> (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

The regulations under section 104(a)(2) provide in pertinent part:

> The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Sec. 1.104-1(c), Income Tax Regs.

The Supreme Court of the United States (Supreme Court) summarized the requirements of section 104(a)(2) as follows:

In sum, the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in Burke establish two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2). First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." * * *

Commissioner v. Schleier, supra at 336-337.

When the Supreme Court issued its opinion in Commissioner v. Schleier, supra, section 104(a)(2), as in effect for the year at issue in Schleier, required, inter alia, that, in order to be excluded from gross income, an amount of damages had to be received "on account of personal injuries or sickness". After the Supreme Court issued its opinion in Schleier, Congress amended (1996 amendment) section 104(a)(2), effective for amounts received after August 20, 1996, by adding the requirement that, in order to be excluded from gross income, any amount received must be on account of personal injuries that are physical or sickness that is physical.[10] Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838. The 1996

---

[10]Sec. 104(a) provides that emotional distress is not to be treated as a physical injury or physical sickness for purposes of sec. 104(a)(2), except for damages not in excess of the amount paid for medical care attributable to emotional distress. In this connection, the legislative history of the 1996 amendment states: "It is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56.

amendment does not otherwise change the requirements of section 104(a)(2) or the analysis set forth in Commissioner v. Schleier, supra; it imposes an additional requirement in order for an amount to qualify for exclusion from gross income under that section.

Where damages are received pursuant to a settlement agreement, such as is the case here, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). The determination of the nature of the claim is factual. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part, and remanded on another issue 70 F.3d 34 (5th Cir. 1995); Seay v. Commissioner, 58 T.C. 32, 37 (1972). Where there is a settlement agreement, that determination is usually made by reference to it. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra at 126. If the settlement agreement lacks express language stating what the amount paid pursuant to that agreement was to settle, the intent of the payor is critical to that determination. Knuckles v. Commissioner, supra at 613; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21. Although the belief of the payee is relevant to that inquiry, the character of the settlement payment hinges ultimately

on the dominant reason of the payor in making the payment. Agar v. Commissioner, supra at 284; Fono v. Commissioner, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984). Whether the settlement payment is excludable from gross income under section 104(a)(2) depends on the nature and the character of the claim asserted, and not upon the validity of that claim. See Bent v. Commissioner, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987); Glynn v. Commissioner, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982); Seay v. Commissioner, supra at 37.

It is petitioner's position that it was the intention of the parties to the settlement agreement that the $20,000 back wages award was to be included, but that the $100,000 emotional distress and legal fees award was not to be included, in petitioner's gross income. In support of that position, petitioner points out that he sustained some bruises as a result of the mine assault and the home assault by Mr. Fleischman and contends that the only claims of petitioner remaining to be settled at the time the parties executed the settlement agreement were his claims relating to those bruises.

The settlement agreement rejects petitioner's position. The settlement agreement expressly provided that petitioner and Martin Marietta entered into that agreement in order to resolve the claims that petitioner asserted against that company in the

MSHA complaints, the Nebraska discrimination complaint, and the union grievance.[11]  Although petitioner had sustained some bruises as a result of the mine assault and the home assault by Mr. Fleischman, none of the claims that petitioner asserted in those complaints and that grievance and that are disclosed by the record in this case was for damages on account of those bruises or any other alleged personal physical injuries or physical sickness.

Paragraph 1 of the settlement agreement provided that, in consideration of the covenants set forth in that agreement, Martin Marietta was to pay petitioner a total of $120,000 that was to be apportioned as follows:  $20,000 was attributable to petitioner's "claims for back wages" and $100,000 was attributable to his "claims of emotional distress and his attorney's fees".  Paragraph 1.a. of the settlement agreement providing for the $20,000 back wages award required Martin Marietta to report that $20,000 in Form W-2 issued to petitioner, which it did.

---

[11]The settlement agreement identified the MSHA complaints, the Nebraska discrimination complaint, and the union grievance as the only complaints and grievance that petitioner filed against Martin Marietta.  The settlement agreement also stated that the parties desired to provide for the dismissal of "all complaints made by Justin Hansen against Martin Marietta Materials, Inc., including the MSHA Complaints, the Nebraska Complaint, and the Grievance". (Emphasis added.)  We believe that the parties to the settlement agreement used the word "including" out of an abundance of caution.  There is no evidence in the record establishing that petitioner filed any other complaints or grievances against Martin Marietta.  See infra note 13.

Paragraph 1.b. of the settlement agreement providing for the $100,000 emotional distress and legal fees award required Martin Marietta to report that $100,000 in Form 1099 issued to petitioner, which it did.[12]

Paragraph 2 of the settlement agreement provided that, in consideration of, inter alia, the $120,000 settlement amount that Martin Marietta agreed in paragraph 1 of that agreement to pay to petitioner, petitioner was to release Martin Marietta from all claims that formed the basis of the MSHA complaints, the Nebraska discrimination complaint, and the union grievance.[13]

---

[12]The Court takes judicial notice of the instructions for Form 1099-MISC, the type of Form 1099 which Martin Marietta issued to petitioner for his taxable year 2004 and in which that company reported as income the $100,000 emotional distress and legal fees award. Those instructions state, inter alia, that the following items are to be reported in that form as "Other income": "Generally, * * * any damages for nonphysical injuries or sickness, and any other taxable damages." Those instructions further state in pertinent part: "Generally, report all **compensatory damages** for nonphysical injuries or sickness, such as employment discrimination or defamation."

[13]Paragraph 2 of the settlement agreement further provided that petitioner was to release Martin Marietta from any claims arising under the Americans with Disabilities Act (ADA) and the Fair Labor Standards Act (FLSA) as well as "any and all other claims for liability * * * which have arisen or might arise from the facts and circumstances forming the basis" of the MSHA complaints, the Nebraska discrimination complaint, or the union grievance. There is no evidence in the record establishing that petitioner asserted any claims against Martin Marietta under either the ADA or the FLSA. See supra note 11. With respect to the provision releasing Martin Marietta from "any and all other claims", that provision appears to be boilerplate language, to which we do not attribute any significance. See Ndirika v. Commissioner, T.C. Memo. 2004-250.

Paragraphs 5 and 6 of the settlement agreement (1) required as "indispensable prerequisites" to the settlement agreement that petitioner and Martin Marietta cause the MSHA complaints, the Nebraska discrimination complaint, and the union grievance to be dismissed with prejudice and (2) provided that that agreement was to be null and void if those complaints and that grievance were not dismissed with prejudice.

On the record before us, we find that the intention of the parties to the settlement agreement as reflected by the express terms of that agreement was that the $100,000 emotional distress and legal fees award that petitioner received from Martin Marietta was to be included in his gross income. It is not clear why the parties to the settlement agreement characterized that $100,000 amount as attributable to petitioner's "claims of emotional distress" and attorney's fees. But they did. What is clear from the settlement agreement is that petitioner did not receive any portion of the $100,000 emotional distress and legal fees award on account of personal physical injuries or physical sickness.[14]

---

[14]As discussed supra note 10, sec. 104(a) provides that emotional distress is not to be treated as a physical injury or physical sickness for purposes of sec. 104(a)(2), except for damages not in excess of the amount paid for medical care attributable to emotional distress. Petitioner does not contend that he sought medical treatment or paid for medical care attributable to any emotional distress that he claims to have suffered as a result of Martin Marietta's actions.

On the record before us, we find that petitioner has failed to carry his burden of establishing that he received the $100,000 emotional distress and legal fees award from Martin Marietta on account of personal physical injuries or physical sickness.[15]  On that record, we further find that that $100,000 award is not excludable under section 104(a)(2) from petitioner's gross income for his taxable year 2004.[16]

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered</u>

<u>for respondent as to the defi-</u>

<u>ciency and for petitioner as to</u>

<u>the penalty under section 6662(a)</u>.

---

[15]Assuming arguendo that petitioner had established that he received a portion of the $100,000 emotional distress and legal fees award on account of personal physical injuries or physical sickness, on the record before us, we would find that petitioner has failed to establish the portion of that award that he received on account of any such personal physical injuries or physical sickness.

[16]We presume that the parties are in agreement regarding the treatment of the attorney's fees paid out of the settlement amount to petitioner's attorney, which they did not address at trial and do not address on brief.  See <u>Commissioner v. Banks</u>, 543 U.S. 426 (2005).