T.C. Memo. 2013-226

UNITED STATES TAX COURT

JOSE B. MOLINA AND VIRNA N. MOLINA, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20218-11.                    Filed September 23, 2013.

Jose B. Molina and Virna N. Molina, pro sese.

<u>Wendy D. Gardner</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency of $155,402 in

petitioners' Federal income tax for their 2007 tax year.[1]  During trial, respondent

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986, as amended (Code) and in effect for the year in issue, and Rule
(continued...)

**[\*2]** conceded that petitioners are entitled to a deduction pursuant to section

62(a)(20) for counsel's fees of $56,179 and that petitioners are entitled to four

personal exemptions.[2] After petitioners' concessions,[3] the only issue that we must

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure. We round all
monetary amounts to the nearest dollar.

[2]Remaining adjustments set forth by respondent in the notice of deficiency
depend on a Rule 155 computation, which we order below, and need not be
addressed in this opinion.

[3]Petitioners contend that respondent denied them sufficient time to file their
petition because they did not receive the deficiency notice until two months after
respondent issued it. However, petitioners concede that they received a notice of
deficiency and timely filed a petition. Moreover, petitioners do not contend
specific harm caused by the alleged delay or alleged errors by respondent (e.g.,
that respondent did not send the notice of deficiency to petitioners' last known
address). Because petitioners bear the burden of proof but have failed to set forth
clear and concise assignments of error or a clear and concise statement of facts,
this issue is deemed conceded. See Rules 142(a), 34(b)(4) and (5); Funk v.
Commissioner, 123 T.C. 213, 215 (2004); Jarvis v. Commissioner, 78 T.C. 646,
658 n.19 (1982).

Petitioners also contend that respondent refused to allow them to be
represented by counsel, intimidated them against seeking counsel, misled them
regarding the status of their case and a past abatement, and failed to send them a
Letter 950. Generally, we will not look behind a notice of deficiency to examine
the evidence used, the propriety of the Commissioner's motives, or administrative
policy or procedure used in making the determination. Cadwell v. Commissioner,
136 T.C. 38, 48-49 (2011), aff'd, 483 Fed. Appx. 847 (4th Cir. 2012); Greenberg's
Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Moreover, petitioners
did not stipulate facts, present admissible evidence, or otherwise address these
issues at trial or on brief. Accordingly, these issues are deemed conceded and we

(continued...)

[*3] decide is whether the $450,000 of proceeds petitioner Jose B. Molina received in 2007 from the settlement of his lawsuit against his former employer are excludable from petitioners' gross income pursuant to section 104(a)(2).

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of facts are incorporated in this opinion by reference and are found accordingly. Petitioners are husband and wife who resided in New Jersey at the time they filed their petition.

From 1980 until 2007, Mr. Molina was employed by the Clearing House Payments Co., LLC (the Clearing House). Mr. Molina testified that, during 2004 and 2005, he began to suffer from "peptic ulcers, gastric problems, intestinal problems, [and] stomach pain" as a result of being overworked because of the lack of proper staffing and being racially discriminated against by supervisors at the Clearing House. Medical tests administered to Mr. Molina were inconclusive as to any viral infection or peptic ulcers. On July 29, 2005, Mr. Molina notified his supervisors at the Clearing House of insufficient staffing in his department and its

---

³(...continued)
do not address them further. See Rule 149(b); Cadwell v. Commissioner, 136 T.C. at 49.

[*4] potential detriment to employee morale and health.  Mr. Molina never filed a disability claim with the Clearing House or its disability insurance carrier.

On May 1, 2007, Mr. Molina filed a complaint with the Superior Court of New Jersey against the Clearing House.  In the complaint Mr. Molina alleged, inter alia, that the Clearing House and certain of its employees violated the New Jersey Law Against Discrimination and the Conscientious Employee Protection Act by creating a hostile work environment, discriminating against Mr. Molina because of his race and nationality, and retaliating against Mr. Molina for reporting the alleged discrimination.  Mr. Molina also alleged in the complaint that he was the victim of assault and of "serious and significant emotional and physical distress", but at trial he testified that he did not claim specific physical injuries in the complaint.  In his complaint Mr. Molina sought compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and further relief as the Superior Court of New Jersey saw fit.  On May 20, 2007, Mr. Molina amended the complaint to include an additional allegation under the Conscientious Employee Protection Act.  On or about June 27, 2007, Mr. Molina's case was removed to the U.S. District Court for the District of New Jersey.

On July 10, 2007, Mr. Molina, represented by his counsel, Paul Weiner, attended a mediation session with the Clearing House.  At the conclusion of a

**[*5]** mediation session, Mr. Molina and the Clearing House informally agreed to settle Mr. Molina's claims against the Clearing House. Before signing an informal settlement document prepared by Mr. Weiner and representatives from the Clearing House, Mr. Molina had an opportunity to review the terms of the informal settlement document and discuss the terms with Mr. Weiner. Pursuant to the terms of the informal settlement document, Mr. Molina and the Clearing House agreed, inter alia, that Mr. Molina's employment with the Clearing House was terminated effective July 10, 2007, and that the Clearing House would pay Mr. Molina a total of $700,000, split as follows: (1) $373,000, less applicable withholding, within 10 calendar days of the effective date of a settlement agreement; (2) $77,000 within 10 calendar days of the effective date of a settlement agreement; and (3) $250,000, less applicable withholding, on January 2, 2008. The Clearing House attributed the $77,000 payment to attorney's fees for Mr. Molina's counsel and the $373,000 and $250,000 payments to wages and other taxable benefits for Mr. Molina. The Clearing House did not attribute any of the payments to physical injuries, physical illness, or emotional distress.

On July 24, 2007, Mr. Molina and the Clearing House formalized the terms of the informal settlement document by executing the Confidential Settlement Agreement and Release (settlement agreement). The settlement agreement did not

[*6] allocate any specific payments from the Clearing House to Mr. Molina on account of claims of physical sickness, physical injuries, physical distress, or emotional distress. Mr. Molina also agreed to a general waiver and release of the Clearing House and the other defendants "from and against any and all manner of actions, causes of actions, suits, proceedings, [and] liabilities".

On July 24, 2007, Mr. Molina and the Clearing House entered a stipulation of dismissal with the U.S. District Court for the District of New Jersey, and on July 30, 2007, the District Court issued an order of dismissal.

During 2007, Mr. Molina's attorneys, acting on behalf of Mr. Molina, received two payments from the Clearing House: a wire transfer of $260,988, which was $373,000 less applicable withholdings, and $77,000. Mr. Molina's attorneys kept $44,800 of the $77,000 as attorney's fees and transferred the remaining $293,188 to Mr. Molina. During 2007, petitioners paid total attorney's fees of $56,179 in connection with Mr. Molina's case against the Clearing House.

The Clearing House sent Mr. Molina a Form W-2, Wage and Tax Statement, that reported Mr. Molina received $483,535 of wage compensation during 2007.[4] The Clearing House also sent Mr. Molina a Form 1099-MISC,

---

[4]Of Mr. Molina's $483,535 of total wage compensation, $373,000 was attributable to amounts received under the settlement agreement. The remaining

(continued...)

[*7] Miscellaneous Income, that reported Mr. Molina received $77,000 of additional income during 2007. On their 2007 Federal income tax return, petitioners reported wages of $534,520[5] but did not report the additional income of $77,000. On line 36 of their 2007 tax return, petitioners adjusted their gross income by $450,000. On a statement attached to their 2007 tax return petitioners stated that the $450,000 that Mr. Molina received pursuant to the settlement agreement should be excluded from gross income pursuant to section 104(a)(2). During May 2008, petitioners filed an amended tax return for their 2007 tax year, in which they removed the line 36 adjustment of $450,000 and added on line 21 other income of $450,000 but maintained that the amount should be excluded from gross income pursuant to section 104(a)(2).

Respondent sent and petitioners received a notice of deficiency dated June 7, 2011, determining that petitioners owed a deficiency of $155,402 for their 2007 tax year. On August 31, 2011, petitioners timely filed a petition in this Court.

_____

[4](...continued)
portion of his total wage compensation was attributable to actual wages received from the Clearing House before his termination on July 10, 2007, and is not at issue.

[5]Of the total wages of $534,520 petitioners reported, only $483,535 was attributable to Mr. Molina. The remaining $50,985 was attributable to wages earned by petitioner Virna N. Molina and reported to her on a Form W-2. Mrs. Molina's wages are not at issue.

**[\*8]** On September 27, 2012, Jeffrey Raskin, Mr. Molina's medical doctor, drafted a letter documenting some of Mr. Molina's health concerns (Dr. Raskin's letter). Dr. Raskin's letter indicated that he had provided medical care for Mr. Molina for eight years, including a meeting on January 3, 2007, when Mr. Molina reported multiple gastrointestinal symptoms. Dr. Raskin stated that at the time of the meeting with Mr. Molina he believed that Mr. Molina's symptoms "may have been due to his stress at work." Dr. Raskin was not available to testify at trial.

OPINION

As a general rule, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Gross income generally includes all income from whatever source derived. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). The definition of gross income is broad in scope, while statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Damages (other than punitive) received on account of personal physical injuries or physical sickness may generally be excluded from gross income. Sec. 104(a)(2). The regulations provide that "[t]he term 'damages' * * * means an amount received * * * through prosecution of a legal suit or action, or

**[\*9]** through a settlement agreement entered into in lieu of such prosecution."

Sec. 1.104-1(c), Income Tax Regs. To exclude damages from gross income

pursuant to section 104(a)(2), the taxpayer must establish that (1) the underlying

cause of action is based upon tort or tort-type rights[6] and (2) the damages were

received on account of personal injuries or sickness. Commissioner v. Schleier,

515 U.S. at 337.[7]

Respondent concedes that petitioners have satisfied the first requirement for

exclusion, i.e., that the underlying cause of action for which the settlement

proceeds were paid was based upon tort or tort-type rights, because Mr. Molina

---

[6]But see sec. 1.104-1(c), Income Tax Regs. (as amended by T.D. 9573, 2012-12 I.R.B. 498). However the parties do not raise this regulation and, therefore, we do not address it.

[7]When the Supreme Court issued its opinion in Commissioner v. Schleier, 515 U.S. 323 (1995), sec. 104(a)(2), as in effect for the year at issue in that case, required, inter alia, that in order to be excluded from gross income an amount of damages had to be received "on account of personal injuries or sickness". After the Supreme Court issued its opinion in Schleier, Congress amended (1996 amendment) sec. 104(a)(2), effective for amounts received after August 20, 1996, by adding the requirement that, in order to be excluded from gross income, any amount received must be on account of personal injuries that are physical or sickness that is physical. Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1605, 110 Stat. at 1838. The 1996 amendment does not otherwise change the requirements of sec. 104(a)(2) or the analysis set forth in Schleier; it imposes an additional requirement in order for an amount to qualify for exclusion from gross income under that section. Hansen v. Commissioner, T.C. Memo. 2009-87, 2009 WL 1139469, at \*5.

[*10] sought to recover compensatory and punitive damages authorized by the New Jersey Law Against Discrimination and the Conscientious Employee Protection Act. Accordingly, we consider only the issue of whether the damages were received on account of personal physical injuries or physical sickness.

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether the damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). Whether the settlement payment is excludable from gross income under section 104(a)(2) depends upon the nature and the character of the claims asserted and not upon the validity of those claims. See Bent v. Commissioner, 87 T.C. 236, 244 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987); Church v. Commissioner, 80 T.C. 1104, 1106-1107 (1983). The crucial question is: "[I]n lieu of what was the settlement amount paid?" Bagley v. Commissioner, 105 T.C. 396, 406 (1995), aff'd, 121 F.3d 393 (8th Cir. 1997). To justify exclusion from income under section 104, the taxpayer must show that his settlement proceeds were in lieu of damages for physical injuries or physical sickness. See Green v. Commissioner, 507 F.3d 857, 867 (5th Cir. 2007), aff'g T.C. Memo. 2005-250; Bagley v. Commissioner, 105 T.C. at 406. The determination of the nature of the underlying claim is factual. Bagley v. Commissioner, 105 T.C. at 406; Robinson v.

[*11] Commissioner, 102 T.C. 116, 126 (1994), aff'd in part, rev'd in part and remanded on another issue, 70 F.3d 34 (5th Cir. 1995).

Where there is a settlement agreement, the determination of the nature of the claim is usually made by reference to the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. at 126. If the settlement agreement counsel lacks an express statement of what the amount paid pursuant to that agreement was to settle, the intent of the payor is critical to that determination. Knuckles v. Commissioner, 349 F.2d at 613; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), aff'g per curiam T.C. Memo. 1960-21. Although the belief of the payee is relevant to that inquiry, the character of the settlement payment hinges ultimately on the dominant reason of the payor in making the payment. Agar v. Commissioner, 290 F.2d at 284; Fono v. Commissioner, 79 T.C. 680, 696 (1982), aff'd without published opinion, 749 F.2d 37 (9th Cir. 1984).

The settlement agreement did not allocate any specific payments from the Clearing House to Mr. Molina on account of claims of physical sickness, physical injuries, physical distress, or emotional distress. Of the $450,000 to be paid to Mr. Molina during 2007 pursuant to the settlement agreement, the Clearing House attributed the $77,000 payment to attorney's fees for Mr. Molina's counsel and the

**[*12]** $373,000 payment to wages and other taxable benefits for Mr. Molina. The Clearing House did not attribute any of the 2007 payments to physical injuries, physical illness, or emotional distress. Moreover, the settlement agreement did include a statement of Mr. Molina's consent to a general waiver and release of the Clearing House and the other defendants "from and against any and all manner of actions, causes of actions, suits, proceedings, [and] liabilities". We have held that the nature of underlying claims cannot be determined from a general release that is broad and inclusive, see Connolly v. Commissioner, T.C. Memo. 2007-98, 2007 WL 1201543, at *3, and that all settlement proceeds are included in gross income where there is a general release but no allocation of settlement proceeds among various claims, see Evans v. Commissioner, T.C. Memo. 1980-142. Accordingly, we conclude that petitioners have failed to prove that the Clearing House intended to compensate Mr. Molina for his physical injuries or physical sickness, rather than for a general release of various claims.

Petitioners allege that Mr. Molina suffered from "peptic ulcers, gastric problems, intestinal problems, [and] stomach pain" as a result of being overworked because of the lack of proper staffing and being racially discriminated against by supervisors at the Clearing House. Petitioners contend that the payments from the Clearing House should be excluded from gross income

[*13] pursuant to section 104(a)(2) because the payments were to compensate Mr. Molina for physical sickness. Petitioners' contention is without merit.

Petitioners cite Domeny v. Commissioner, T.C. Memo. 2010-9, 2010 WL 114287, in support of their contention that payments may be excluded from income if in satisfaction of a claim of stress-induced physical sickness. We believe that petitioners' reliance on Domeny is mistaken. In Domeny, the settlement agreement was silent as to the payor's intent but still allocated payments as wage compensation, attorney's fees, and nonemployee compensation. Id., 2010 WL 114287, at *4. The Court concluded that the taxpayer offered credible evidence proving that she was physically ill and that she informed her employer of that fact, and held that the differing treatment of the three types of payments and the negotiations between the taxpayer and the employer suggested that at least a portion of the taxpayer's recovery was attributable to that physical illness. Id.

In contrast, petitioners have not offered credible evidence establishing that Mr. Molina was physically ill or that Mr. Molina even informed the Clearing House of his alleged physical illness,[8] the settlement agreement does not allocate

---

[8]At trial, petitioners offered Dr. Raskin's letter as evidence that Mr. Molina suffered gastrointestinal symptoms as a result of stress at work. However, Dr.

(continued...)

[*14] payments to specific claims, and the Clearing House clearly intended for all of the payments to be wage compensation and attorney's fees. Moreover, Mr. Molina's complaint itself only mentioned a claim for "serious and significant emotional and physical distress"[9] without elaborating specific physical injuries or

---

[8](...continued)
Rakin's letter (1) was not admitted as evidence at trial, (2) was not considered by the Internal Revenue Service Office of Appeals, and (3) was not contemporaneously drafted at the time of the alleged physical symptoms but rather just days before trial. Additionally, Dr. Raskin was unable to testify at trial to verify the contents of the letter or to give testimony. Lab tests and other medical examinations ordered by Dr. Raskin were inconclusive as to any physical injuries or physical sickness, and Mr. Molina never filed a disability claim with the Clearing House or its disability insurance carrier. Therefore, the only evidence to support petitioners' claims of physical sickness and physical injuries is Mr. Molina's self-serving testimony, which we do not deem credible in the light of the foregoing.

[9]Although petitioners do not in their petition or brief explicitly claim that proceeds from the settlement agreement were in satisfaction of Mr. Molina's claims for emotional distress, emotional distress is a listed claim in Mr. Molina's complaint. However, sec. 104(a) provides that emotional distress is not to be treated as a physical injury or physical sickness for purposes of excluding damages from gross income pursuant to sec. 104(a)(2), except for damages not in excess of the amount paid for medical care attributable to emotional distress. See Blackwood v. Commissioner, T.C. Memo. 2012-190, 2012 WL 2848677, at *5; see also Hansen v. Commissioner, T.C. Memo. 2009-87. Additionally, the legislative history of the 1996 amendment states: "[I]t is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H.R. Conf. Rept. No. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041. Because petitioners have not alleged that Mr. Molina incurred medical costs or offered evidence in support thereof, we conclude that no portion of the proceeds paid to Mr. Molina under the

(continued...)

[*15] sickness. Neither the complaint nor the amended complaint ever connected Mr. Molina's alleged gastrointestinal problems with his claims for damages, which were based almost entirely on discrimination and retaliation. At trial, Mr. Molina admitted that he did not claim specific physical injuries or sickness in the complaint. Considering the facts that (1) the complaint placed little emphasis on Mr. Molina's physical sickness, (2) the settlement agreement did not allocate any amounts specifically to physical sickness, and (3) the Clearing House did not intend for the payments to be in satisfaction of claims of physical sickness, we conclude that petitioners have failed to prove that any portion of the payments received under the settlement agreement was to compensate Mr. Molina for physical sickness.

Petitioners also contend that Mr. Molina did not have an opportunity to have the allocation of payments set forth in the settlement agreement altered before signing it. Mr. Molina testified that he was under the impression that the allocations (or lack thereof) set forth in the settlement agreement were mandated by the Internal Revenue Service and that he would not be taxed on those payments. We decline to address petitioners' contentions because we find Mr.

---

[9](...continued)
settlement agreement may be excluded from gross income pursuant to sec. 104(a)(2) on account of emotional distress.

**[*16]** Molina's testimony to be less than credible. A representative of the Clearing House who was present at the mediation where Mr. Molina and the Clearing House agreed to the terms of the settlement testified that both parties negotiated the terms of the settlement agreement at that mediation session and that Mr. Molina was represented by Mr. Weiner, his attorney, throughout the negotiation of those terms. Additionally, in an email communication to petitioner after the mediation session, Mr. Weiner stated that neither Mr. Weiner nor the Clearing House representatives told Mr. Molina that the allocations were unalterable or taxable. Instead, Mr. Weiner advised Mr. Molina that he was not a tax attorney and could not give Mr. Molina tax advice regarding the settlement proceeds and that Mr. Molina should confer with a tax professional. Accordingly, petitioners have not proved that Mr. Molina did not have an opportunity to have the payments set forth in the settlement agreement allocated.

On the basis of the foregoing, we conclude that petitioners have failed to prove that any portion of the payments received under the settlement agreement was to compensate Mr. Molina for personal physical injuries or physical sickness. Consequently, we hold that Mr. Molina's proceeds of $450,000 pursuant to the settlement agreement are not excludable from petitioners' 2007 gross income pursuant to section 104(a)(2). However, as stated above, respondent concedes that

**[\*17]** petitioners are allowed a fourth personal exemption and a deduction of $56,179 for counsel's fees.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.