T.C. Memo. 2017-129

UNITED STATES TAX COURT

LLOYD ANTHONY RAJCOOMAR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13668-16.                    Filed July 3, 2017.

Lloyd Anthony Rajcoomar, pro se.

<u>Christopher D. Davis</u> and <u>Gerald Mackey</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  The Internal Revenue Service (IRS or respondent) deter-
mined a deficiency of $3,780 with respect to petitioner's Federal income tax for
2013.[1]  Petitioner has conceded all of the adjustments set forth in the notice of

_____

[1]All statutory references are to the Internal Revenue Code in effect for the
(continued...)

[*2] deficiency.  The sole issue remaining for decision, which petitioner raises by way of offset, is whether he may exclude from gross income under section 104(a)(2), as damages received "on account of personal physical injuries or physical sickness," proceeds that he received under a settlement agreement with his former employer.  Concluding as we do that the answer to this question is "no," we will sustain the deficiency.

FINDINGS OF FACT

The parties filed a stipulation of facts with attached exhibits that is incorporated by this reference.  Petitioner resided in New York when he filed his petition.

Before 2013 petitioner was employed by Mount Saint Mary College (college) as a campus safety officer.  In January 2011 he was seriously injured in a car accident unrelated to his employment.  The trucking company whose vehicle rear-ended his car eventually paid him a $1.75 million damage award, which he received in 2015.  That recovery is not at issue here.

Petitioner had several surgeries because of the injuries he suffered in the car crash.  These injuries caused him to go on short-term disability leave from the

---

[1](...continued)
tax year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] college in October 2012. In February 2013 he had ankle surgery, also connected with the injuries he suffered in the car crash, and he remained on short-term disability leave. On April 17, 2013, the college informed him that he was near the end of his maximum disability leave period and that, if he did not return to work by April 30, his employment would be terminated.

Petitioner replied that, if he returned to work, he would be unable to perform his usual patrol duties because he needed to use crutches or wear a protective boot. He asked to be shifted to a more sedentary position. The college declined to permit such a change, insisting that he return to work "without restrictions." He did not return to work by the deadline, and he was fired.

In response to his firing petitioner filed a complaint in May 2013 with the New York State Division of Human Rights (Division) and a similar complaint with the Equal Opportunity Employment Commission (EEOC). In the Division complaint, which he captioned "Description of Discrimination," he alleged that "the college discriminated against me on the basis of my disability" and that it had failed to offer him a "reasonable accommodation." In support of this claim he cited the college's April 17 letter, which stated: "You will be expected to return to work without restrictions or face termination of employment."

**[*4]** Petitioner alleged that Caucasian employees had been allowed the type of "reasonable accommodation" that the college refused to make for him. He did not allege that he had suffered any physical injury for which the college was responsible, and he did not seek compensation for any physical injury. Rather, he urged the Division to "investigate and defend me against the discrimination that I faced based on my disabilities while under the * * * [college's] employ."

In September 2013 petitioner and the college settled this dispute by executing a "Conciliation Agreement and General Release." This document recited that petitioner had filed complaints with the Division and the EEOC alleging that the college had "committed unlawful discriminatory practices relating to his employment because of disability." While the Division had made no findings regarding these allegations, the parties "desire[d] to resolve all pending litigation" by executing the settlement.

In exchange for a monetary payment petitioner agreed to withdraw with prejudice the complaints he had filed with the Division and the EEOC. He agreed to release any claim he might have had against the college for "compensation in any form" arising from "the term and conditions of * * * [his] employment" or the termination of his employment. He specifically released any claims arising under any Federal or State law "prohibiting employment discrimination based upon age,

**[\*5]** race, color, sex, religion, handicap or disability." The agreement does not recite any allegation of physical injury, and petitioner did not release the college from any claim of physical injury. The parties agreed that "a Form W-2 will be issued" for the settlement payment "less legal withholdings."

The college issued petitioner a Form W-2, Wage and Tax Statement, reporting the settlement amount as wages for 2013. He timely filed Form 1040, U.S. Individual Income Tax Return, for 2013, reporting the proceeds as wages on line 7. On March 14, 2016, the IRS sent him a timely notice of deficiency that adjusted his Social Security income, reduced a claimed casualty loss deduction, and disallowed a claimed deduction for gambling losses.

Petitioner timely petitioned this Court. Before trial he conceded all of the adjustments in the notice of deficiency. By way of offset he contended that he had erred in treating the settlement payment as taxable income and that it was excludable from gross income in its entirety under section 104(a)(2).

OPINION

The IRS' determinations in a notice of deficiency are generally presumed correct though the taxpayer can rebut this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In certain circumstances the burden of proof on factual issues may shift to respondent. See sec. 7491(a); Rule 142(a)(1). Peti-

**[\*6]** tioner does not contend, and the record does not demonstrate, that this provision applies here.

Section 61(a) defines "gross income" as "all income from whatever source derived." This definition has broad scope, and exclusions from gross income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940). Proceeds from litigation settlements constitute gross income unless the taxpayer proves that the proceeds fall within a specific statutory exclusion. Schleier, 515 U.S. at 328-337; Save v. Commissioner, T.C. Memo. 2009-209, 98 T.C.M. (CCH) 218.

The exclusion from gross income upon which petitioner relies appears in section 104(a)(2). It provides that gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement * * *) on account of personal physical injuries or physical sickness." Congress intended this exclusion to cover all nonpunitive damages that flow from a physical injury or physical sickness. See H.R. Conf. Rept. No. 104-737, at 301 (1996), 1996-3 C.B. 741, 1041. For this purpose, "emotional distress shall not be treated as a physical injury or physical sickness." Sec. 104(a) (penultimate sentence).

[*7]   When damages are received under a settlement agreement, the nature of the claim that was the actual basis for the settlement determines whether the damages are excludable under section 104(a)(2).  United States v. Burke, 504 U.S. 229, 237 (1992).  "The nature of the claim" is typically determined by reference to the terms of the agreement.  See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33, 23 T.C.M. (CCH) 182.  If the settlement agreement does not explicitly state which claims the payment was made to settle, "the intent of the payor * * * is critical."  Longoria v. Commissioner, T.C. Memo. 2009-162, 98 T.C.M. (CCH) 11, 15; see Devine v. Commissioner, T.C. Memo. 2017-111, at *11; George v. Commissioner, T.C. Memo. 2016-156, at *7.

The intent of the payor may be determined by taking into consideration all of the facts and circumstances, including the amount paid, the circumstances leading to the settlement, and the allegations in the injured party's complaint.  Green v. Commissioner, 507 F.3d 857, 868 (5th Cir. 2007), aff'g T.C. Memo. 2005-250, 90 T.C.M. (CCH) 436; Bent v. Commissioner, 87 T.C. 236, 245 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987).  "[T]he nature of underlying claims cannot be determined from a general release [of claims] that is broad and inclusive."  Ahmed v. Commissioner, T.C. Memo. 2011-295, 102 T.C.M. (CCH) 607, 608 (citing Connolly v.

**[*8]** <u>Commissioner</u>, T.C. Memo. 2007-98, 93 T.C.M. (CCH) 1138), <u>aff'd</u>, 498 F. App'x 919 (11th Cir. 2012)).

Petitioner's cause of action was based exclusively on the New York Human Rights Law and comparable provisions of Federal law that prohibit discrimination on the basis of disability. Nowhere in his complaint or in his 12-page rebuttal to the college's response to that complaint did he allege any physical injury or physical sickness for which the college should be liable. The settlement agreement does not mention any physical injury or physical sickness that he suffered while on the job, much less allocate any portion of the settlement to claims therefor.

By executing the settlement petitioner released the college from any claims arising under any Federal or State law "prohibiting employment discrimination based upon age, race, color, sex, religion, handicap or disability" as well as from any claim for compensation arising from "the term and conditions of * * * [his] employment" or the termination of his employment. There is no suggestion in this provision that petitioner had made, or was releasing the defendants from, any claims for damages on account of physical injury or physical sickness. <u>See</u> <u>Molina v. Commissioner</u>, T.C. Memo. 2013-226, 106 T.C.M. (CCH) 371, 373-374. The parties explicitly recited their agreement that "a Form W-2 will be issued," reflecting their understanding that the settlement proceeds replaced lost wages.

**[*9]** At trial petitioner acknowledged that he had to demonstrate some physical injuries apart from those suffered in the 2011 car crash in order to render the settlement payment "damages received * * * on account of personal physical injuries or physical sickness." See sec. 104(a)(2). He testified vaguely that the college's alleged discrimination had exacerbated his earlier injuries, e.g., by causing him headaches. But he pointed to no medical evidence to support this. The only medical bills in the record relate to his February 2013 ankle surgery and a followup visit six months after his employment was terminated by the college.

In sum, there is no credible evidence that petitioner suffered any on-the-job physical injury for which the college might be thought to have compensated him. His complaint and the agreement that settled his complaint uniformly refer to claims of disability-based discrimination in alleged violation of Federal and State civil rights laws. We accordingly conclude that petitioner has not borne his burden of proving that any portion of the settlement proceeds was excludable from gross income under section 104(a)(2).

To reflect the foregoing,

Decision will be entered for

respondent.
