T.C. Memo. 2011-295

UNITED STATES TAX COURT

SYED A. AND RAFIUNNISA R. AHMED, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5080-10.              Filed December 22, 2011.

Syed A. and Rafiunnisa R. Ahmed, pro sese.

<u>Tammra S. Mitchell</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency of $22,185
in petitioner's 2007 Federal income tax and an accuracy-related
penalty of $4,437 pursuant to section 6662(a).[1]  The issues we

_____

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended and in effect for the
year at issue, and Rule references are to the Tax Court Rules of
Practice and Procedure.

must decide are whether proceeds from the settlement of an employment discrimination lawsuit are excludable from gross income pursuant to section 104(a)(2) and whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a).

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of facts are incorporated in this opinion by reference and are found accordingly.  At the time they filed their petition, petitioners were residents of Georgia.

Syed A. Ahmed (petitioner) was born in India but immigrated to the United States, and he became a U.S. citizen in 1999. Petitioner is a practicing Muslim.

In 1990 Fulton County hired petitioner as a programmer in its information technology department.  In 1999 petitioner was promoted to the position of systems analyst.

During his employment with Fulton County petitioner filed several complaints with State and Federal agencies alleging discrimination.  On July 11, 2006, he filed a complaint in the U.S. District Court for the Northern District of Georgia, seeking damages and injunctive relief against Fulton County.

In that complaint, petitioner raised claims pursuant to 42 U.S.C. section 1983 that his constitutional rights had been violated under the color of State law; that he had been

discriminated against on the basis of his race, religion, and national origin in violation of title VII of the Civil Rights Act of 1964; that Fulton County had retaliated against him for filing complaints alleging discrimination in violation of title VII of the Civil Rights Act of 1964; that he had been terminated and denied access to public buildings on the basis of his race in violation of 42 U.S.C. section 1981; and that he had been discriminated against in violation of the Age Discrimination in Employment Act. In his complaint, he prayed for the following relief: Backpay; back benefits; compensatory and punitive damages from Fulton County; compensatory and punitive damages from his former supervisor; liquidated damages; the recovery of legal expenses; and the promotion he was denied.

In support of his claims, he alleged numerous specific facts regarding discriminatory treatment. He alleged that, following September 11, 2001, his coworkers and supervisors became hostile towards him because of his Muslim faith. He alleged that he was terminated from his job in retaliation for filing a complaint about his treatment with the Georgia Office of Equal Employment Opportunity. He alleged that his supervisors continued to harass him even after he was terminated, arranging for Fulton County to post flyers in all Fulton County buildings that prohibited him from entering public buildings in Fulton County. Petitioner had a heart attack during August 2004, shortly after being terminated

by Fulton County, and he alleged that the harassment he suffered while employed by Fulton County contributed to his heart attack.

Although petitioner was reinstated with backpay by the Fulton County Personnel Board, he alleged that the harassment continued and even grew worse after he was rehired. He alleged that, among other things, on his first day back on the job he was assigned to work at a building where he was exposed to chemicals that made him nauseated and dizzy and that required him to visit the emergency room on the same day. Although he filed a workers' compensation claim for his hospitalization in January 2005, his claim was denied by the Georgia State Board of Workers' Compensation. Petitioner alleged that, after he was reinstated, his coworkers and supervisors continued to harass him because of his religious beliefs.

On October 4, 2007, petitioner signed a settlement agreement in which he agreed to the dismissal of his lawsuit against Fulton County in exchange for $150,000 (settlement agreement). The settlement agreement stated that it was intended to resolve the suit brought by petitioner against Fulton County for "violations of Title VII of the Civil Rights Act of 1964, First and Fourteenth Amendments of the United States Constitution and a violation of Section 1983." The settlement agreement provided that petitioner agreed to release Fulton County from any right to damages he may have had for "personal injuries, contractual

damages, losses and damage to personal property, or any other losses or expenses of any kind (including attorneys' fees) arising from" any actions or omissions of Fulton County.  As a condition of the settlement agreement, petitioner also agreed to retire from his employment with Fulton County.

Petitioner's attorney received the $150,000 pursuant to the settlement agreement, deducted attorney's fees of $60,000, and distributed the remaining $90,000 to petitioner.  The attorney's law firm issued petitioner a Form 1099-MISC, Miscellaneous Income, which stated that he received income of $90,000 from the settlement agreement.  Petitioner did not report that income on his tax return.  However, he did include a prominently inscribed asterisk next to the line for reporting wages on his Form 1040, U.S. Individual Income Tax Return.  In a note at the bottom of the return, he wrote:  "Discrimination Law Suite [sic] settled with Fulton County Govt; (Employer) towards Expenses + Losses for 15 years in the case."

Respondent issued a notice of deficiency to petitioner dated November 30, 2009.  In the notice of deficiency, respondent determined that petitioner's income should be increased by $90,000 because of the income from the settlement agreement. Petitioner timely filed his petition with this Court.

OPINION

As a general rule, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Gross income generally includes all income from whatever source derived. Sec. 61(a). The definition of gross income is broad in scope, while exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Damages (other than punitive) received on account of personal physical injuries or physical sickness may generally be excluded from gross income. Sec. 104(a)(2). For the damages to be excluded under this provision, the underlying cause of action must be based in tort or tort-type rights and the proceeds must be damages received on account of personal physical injury or sickness. Commissioner v. Schleier, supra at 337.

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). Whether the settlement payment is excludable from gross income under section 104(a)(2) depends on the nature and the character of the claims asserted in the lawsuit. See Bent v. Commissioner, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir.

1987); Church v. Commissioner, 80 T.C. 1104, 1106-1107 (1983). To justify exclusion from income under section 104, petitioner must show that his settlement proceeds were in lieu of damages for physical injuries or physical sickness. See Green v. Commissioner, 507 F.3d 857, 867 (5th Cir. 2007), affg. T.C. Memo. 2005-250; Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997). The determination of the nature of the underlying claim is factual. Bagley v. Commissioner, supra at 406; Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part and remanded on another issue 70 F.3d 34 (5th Cir. 1995).

Where there is a settlement agreement, the determination of the nature of the claim is usually made by reference to the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra at 126. If the settlement agreement lacks express language stating what the amount paid pursuant to that agreement was to settle, the intent of the payor is critical to that determination. Knuckles v. Commissioner, supra at 613; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21. Although the belief of the payee is relevant to that inquiry, the character of the settlement payment hinges ultimately on the dominant reason of the payor in making the payment. Agar v. Commissioner, supra at 284; Fono v.

Commissioner, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984).

Petitioner contends that the payment he received from his settlement agreement was to compensate him for his physical injuries, i.e., his heart attack and the dizziness and vomiting he experienced the day he returned to work, which required him to be treated in the emergency room. Although it did mention "personal injuries" among a boilerplate list of other claims from which he agreed to release Fulton County, the settlement agreement did not allocate any portion of the payment to compensate petitioner for his physical injuries. We have held that the nature of underlying claims cannot be determined from a general release that is broad and inclusive. See Connolly v. Commissioner, T.C. Memo. 2007-98. As part of the settlement agreement, petitioner also agreed to retire from his employment with Fulton County, suggesting that at least part of the payment should be considered severance pay.

The complaint itself, although it mentioned petitioner's physical injuries, did not specifically seek relief for those physical injuries. Instead, it sought backpay, back benefits, liquidated damages, attorney's fees, and compensatory and punitive damages for intentional discrimination. The complaint never connected petitioner's heart attack or other physical injuries with petitioner's claims for damages.

Given that the complaint placed little emphasis on petitioner's physical injuries, that the settlement agreement's only mention of "personal injuries"[2] was in boilerplate, and that the record in the instant case contains no other evidence showing that any part of the settlement was for personal injuries, we conclude that petitioner has failed to prove that it was Fulton County's intent to compensate him for his physical injuries. Rather, it appears that one of Fulton County's primary motivations was securing his retirement, and, consequently, at least a portion of the amount petitioner received should be considered severance pay. Petitioner has the burden of proof on the issue, and he has failed to show that any portion of the amount he received pursuant to the settlement agreement was to compensate him for physical injuries. Accordingly, we sustain respondent's determination that the $90,000 petitioner received under the terms of the settlement agreement is taxable.

The second issue we consider is whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a). Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To meet that burden, the Commissioner must come forward with

---

[2]We also note that "personal injuries" is a broader category than "physical injuries." See Venable v. Commissioner, T.C. Memo. 2003-240, affd. 110 Fed. Appx. 421 (5th Cir. 2004).

sufficient evidence indicating that it is appropriate to impose the relevant penalty.  Higbee v. Commissioner, supra at 446.  The Commissioner has the burden of production only; the ultimate burden of proving that the penalty is not applicable remains on the taxpayer.  Id.

Subsection (a) of section 6662 imposes an accuracy-related penalty of 20 percent of any underpayment that is attributable to causes specified in subsection (b), including a "substantial understatement" of income tax.  There is a "substantial understatement" of income tax for any tax year where the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the tax year or $5,000.  Sec. 6662(d)(1)(A).  In his petition, petitioner failed to assign error to respondent's determination to impose a penalty pursuant to section 6662(a).  We have held that a taxpayer who fails to assign error to a penalty is deemed under Rule 34(b)(4) to have conceded the penalty, notwithstanding that the Commissioner failed to produce evidence that the imposition of the penalty was appropriate.  See Swain v. Commissioner, 118 T.C. 358 (2002).  Moreover, petitioner failed to raise the issue at trial.  Accordingly, we sustain respondent's determination of the section 6662(a) penalty.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.