T.C. Memo. 2017-111

UNITED STATES TAX COURT

MICHAEL L. DEVINE, JR. AND THERESA M. DEVINE, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16329-15.                          Filed June 13, 2017.

<u>Edward James Leyden</u>, for petitioners.

<u>Scott A. Hovey</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioners' Federal income tax for 2012,

the Internal Revenue Service (IRS or respondent) determined a deficiency of

$65,401 and an accuracy-related penalty of $13,070 under section 6662(a).[1]  After

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect

(continued...)

**[*2]** concessions,[2] the principal issue for decision is whether petitioners may exclude from gross income under section 104(a)(2), as damages received "on account of personal physical injuries or physical sickness," proceeds that Ms. Devine received under a settlement agreement with her employer.

We conclude that the settlement proceeds compensated Ms. Devine for damages she suffered on account of sexual harassment and gender discrimination and that no portion of the settlement represented damages on account of personal injury or physical sickness. We accordingly hold that petitioners may not exclude any portion of the settlement payment from gross income. We also find that they are liable for an accuracy-related penalty.

---

[1](...continued)
for the tax year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]Petitioners conceded that they had received, but not reported on their 2012 return, taxable interest of $14, taxable wages of $207, and a taxable State income tax refund of $790. Petitioners also stipulated that they had received, but not reported on their 2012 return, retirement income of $5,192 from USAA Federal Savings Bank, which was reported to the IRS as a taxable distribution on Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. Petitioners did not allege--in their petition, at trial, or in their post-trial brief--that this distribution was nontaxable, and they are thus deemed to have conceded this issue. See Rules 34(b)(4), 151(e)(4) and (5); Swain v. Commissioner, 118 T.C. 358, 358 (2002).

**[*3]**                    FINDINGS OF FACT

The parties filed a stipulation of facts with attached exhibits, which is incorporated by this reference.  Petitioners resided in Florida when they petitioned this Court.

From 2008 through February 2010 Theresa M. Devine (petitioner) was employed as a civilian aircraft technician by the District of Columbia Air National Guard (National Guard) at Andrews Air Force Base.  Beginning in 2008 she became the target of sexual harassment and gender discrimination by senior noncommissioned officers (NCOs).  This harassment continued through February 2, 2010, when she resigned, and was thus constructively discharged, from her civilian position with the National Guard.  She continued to serve through 2011 in a military position with her unit.

In late 2008 petitioner informed her supervisors that she was pregnant.  In alleged contravention of National Guard rules, she was ordered to continue working in an area where she would be exposed to toxic chemicals.  When she developed a rash allegedly attributable to this exposure, she was denied leave to receive medical treatment and was ordered to "stock parts" on shelves.

Several months later petitioner consulted informally with a National Guard human relations officer.  During this meeting she reported that she had experi-

[*4] enced several incidents of sexual harassment, inappropriate behavior, and retaliatory action by senior NCOs in her unit. When her supervisors learned that she had done this they chastised her for "breaking the chain of command and going outside to report the incident."

In March 2010 petitioner sought counseling from National Guard equal employment opportunity (EEO) officers. During a meeting on April 10, 2010, she described the misconduct she had experienced, including inappropriate advances by a senior NCO and retaliation by him when she rebuffed those advances. She informed the EEO officers that the bases of her complaint were sexual harassment and gender discrimination. She did not allege during this meeting that she had suffered any physical injury for which the National Guard might be liable.

On April 23, 2010, petitioner submitted through military channels two Forms NGB 333, Discrimination Complaint in the Army and Air National Guard (military side complaints). In the first petitioner alleged sexual discrimination by NCO-1. She alleged that NCO-1 had denied her a promotion because she was pregnant; made romantic advances toward her notwithstanding his knowledge that she was married; and informed other unit members that he desired to have sexual relations with her. Petitioner did not allege that she had suffered any physical injury.

[*5]   In the second military side complaint petitioner alleged sexual harassment by NCO-2.  Petitioner alleged that NCO-2 had stated that he did not want women working in his unit; referred to her in a derogatory fashion as a "good little mechanic"; and insisted that she could not receive a promotion because she was pregnant.  Petitioner did not allege that she had suffered any physical injury.

On May 28, 2010, the National Guard made determinations regarding petitioner's two military side complaints.  It concluded that NCO-1 and NCO-2 had engaged in sexual harassment and gender discrimination.  By way of remedy it reprimanded the two NCOs in question; ordered that supervisors in petitioner's unit receive EEO training; and directed that petitioner be considered for a promotion in the normal course.  The National Guard made no finding that petitioner had suffered any physical injury.

On October 19, 2010, petitioner filed an EEO complaint against the National Guard.[3]  She alleged that she had suffered "sexual harassment and reprisal actions while * * * [she] was working as a civilian technician * * * as well as ongoing reprisals and sexual harassment in her current [military] position with the National Guard."  In neither this complaint nor the accompanying statement, in

_____

[3]She alleged that she had filed this complaint after learning of the "far greater remedies" available through the civilian EEO procedure.

**[*6]** which she detailed her allegations of sexual harassment, did petitioner allege that she had suffered any physical injury.

On October 20, 2010, petitioner filed (with the assistance of counsel) Form NGB 713-5-R, National Guard Bureau Formal Complaint of Discrimination, alleging violations of the Civil Rights Act of 1964, 42 U.S.C. secs. 2000e-1 through 2000e-17 (2006) (civil side complaint). She alleged as the bases for this complaint sexual harassment, nonsexual harassment, and reprisal. She did not allege that she had suffered any physical injury.

On April 6, 2011, petitioner amended her civil side complaint by alleging further reprisal actions by NCO-1 and NCO-2. She also alleged inappropriate behavior by NCO-3, reporting that he "came up behind me and violently threw himself into me giving me a hug * * *. It was forceful enough that it actually hurt. We currently do not have a friendly relationship and I find this behavior to be inappropriate and disturbing." She did not allege that this conduct caused her physical injury. Rather, she cited it as an example of unwanted touching and indicative of the hostile environment in which she worked.

On April 18, 2011, petitioner requested a hearing before an administrative law judge (ALJ) of the Equal Employment Opportunity Commission (EEOC) on her civil side complaint. A significant volume of discovery requests and motions

[*7] practice ensued. These litigation documents uniformly described petitioner's complaint as grounded on sexual harassment, gender discrimination, and reprisal. At no point did either party refer to any physical injury petitioner had suffered.

On January 11, 2012, the EEOC issued a memorandum and order determining that petitioner had "established a prima facie case of sexual, pregnancy-related and reprisal-based harassment." It concluded that petitioner had shown by a preponderance of the evidence that the National Guard had "discriminated against her on the bases of sex and reprisal for prior EEO activity * * * from Summer 2008 to the effective date of her resignation" in February 2010. This memorandum and order mentions no claim by petitioner of, and makes no finding concerning, any type of physical injury.

Further litigation before the EEOC ensued. In March 2012 petitioner made a submission listing 15 specific types of damage she had allegedly suffered because of the actions of the National Guard. This list included no assertion of any physical injury. On June 5, 2012, the ALJ presiding over the EEOC case scheduled a hearing on damages for June 13, 2012.

On June 12, 2012, petitioner's litigation counsel, Joshua Bowers, made a settlement offer to the National Guard. This offer stated that petitioner was "willing to resolve her sexual harassment, pregnancy discrimination and reprisal case"

[*8] in exchange for (among other things) "payment to complainant of a lump sum of $225,000" plus attorney's fees. This letter recited petitioner's understanding that "she is responsible for the Federal and Maryland taxes due based on receipt of this amount."

The National Guard accepted petitioner's offer that same day. The parties executed a formal settlement agreement resolving all issues between them and filed a motion to dismiss the EEOC complaint. The National Guard wired the $225,000 settlement payment to attorney Bowers' escrow account and separately wired $155,860 in payment of his attorney's fees. Neither petitioner's offer nor the settlement agreement made any reference to any form of physical injury.

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for 2012. Before preparing this return they received from attorney Bowers a Form 1099-MISC, Miscellaneous Income, reporting a payment of $220,252 from the litigation settlement.[4] Petitioners nevertheless did not report any income from the

---

[4]The record does not conclusively establish why the Form 1099-MISC reported $220,252 rather than $225,000 as the settlement proceeds petitioner received. It appears that petitioner directed attorney Bowers to pay the difference between these amounts, or $4,748, directly into a retirement account at USAA Federal Savings Bank; that petitioner withdrew the balance of this retirement account (including earnings thereon) later in 2012; and that this withdrawal was reflected on the Form 1099-R issued to her by the bank, which reported a taxable retirement plan distribution of $5,192. See supra note 2.

**[\*9]** settlement on their 2012 return. After a document-matching examination revealed this discrepancy, the IRS issued petitioners a timely notice of deficiency for 2012, determining that the $220,252 payment should have been included in gross income. The IRS also determined an accuracy-related penalty. Petitioners timely petitioned this Court, contending that the $220,252 payment was excludable from gross income under section 104(a)(2).

## OPINION

The IRS' determinations in a notice of deficiency are generally presumed correct though the taxpayer can rebut this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer bears the burden of proving her entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. In certain circumstances the burden of proof on factual issues may shift to respondent. See sec. 7491(a); Rule 142(a)(1). Petitioners do not contend that this provision applies here, and they thus bear the burden of proof.

A.    Taxability of Settlement Proceeds

Section 61(a) defines "gross income" as "all income from whatever source derived." This definition has broad scope, and exclusions from gross income must

[*10] be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940). Proceeds from litigation settlements constitute gross income unless the taxpayer proves that the proceeds fall within a specific statutory exclusion. Schleier, 515 U.S. at 328-337; Save v. Commissioner, T.C. Memo. 2009-209, 98 T.C.M. (CCH) 218.

The exclusion from gross income upon which petitioners rely appears in section 104(a)(2). It provides that gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement * * *) on account of personal physical injuries or physical sickness." Congress intended this exclusion to cover all damages that flow from a physical injury or physical sickness. See H.R. Conf. Rept. No. 104-737, at 301 (1996), 1996-3 C.B. 741, 1041. For this purpose, "emotional distress shall not be treated as a physical injury or physical sickness." Sec. 104(a) (penultimate sentence).

When damages are received under a settlement agreement, the nature of the claim that was the actual basis for the settlement determines whether the damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). "The nature of the claim" is typically determined by reference to the terms of the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir.

**[*11]** 1965), aff'g T.C. Memo. 1964-33, 23 T.C.M. (CCH) 182; Robinson v.

Commissioner, 102 T.C. 116, 126 (1994), aff'd in part, rev'd in part, and

remanded on another issue, 70 F.3d 34 (5th Cir. 1995). If the settlement

agreement does not explicitly state which claims the payment was made to settle,

"the intent of the payor * * * is critical." Longoria v. Commissioner, T.C. Memo.

2009-162, 98 T.C.M. (CCH) 11, 15; see George v. Commissioner, T.C. Memo.

2016-156, at *7.

The intent of the payor may be determined by taking into consideration all

of the facts and circumstances, including the amount paid, the circumstances lead-

ing to the settlement, and the allegations in the injured party's complaint. Green v.

Commissioner, 507 F.3d 857, 868 (5th Cir. 2007), aff'g T.C. Memo. 2005-250, 90

T.C.M. (CCH) 436; Bent v. Commissioner, 87 T.C. 236, 245 (1986), aff'd, 835

F.2d 67 (3d Cir. 1987). "[T]he nature of underlying claims cannot be determined

from a general release that is broad and inclusive." Ahmed v. Commissioner, T.C.

Memo. 2011-295, 102 T.C.M. (CCH) 607, 608.

Petitioner's complaints against the National Guard were expressed in a vari-

ety of formats over 27 months from March 2010 through June 2012. These in-

cluded informal counseling with National Guard EEO officers, formal "military

side" and "civilian side" complaints, a formal proceeding before the EEOC that

**[\*12]** entailed extensive discovery and motions practice, and a settlement offer that the National Guard accepted. At every stage of these proceedings petitioner uniformly alleged as the bases for her complaints some combination of sexual harassment (including hostile working environment), gender- and pregnancy-based discrimination, and reprisals stimulated by her prior EEO activity and her rejection of NCO-1's amorous advances. At no point in these extended proceedings did petitioner allege a physical injury of any kind or demand compensation for any physical injury.

The settlement agreement states that it is "in full and final settlement of the discrimination complaint, EEOC Case No. 531-2011-00321X, and any amendments thereto, as well as any other matters related to Complainant's employment." The nonpecuniary relief petitioner secured was employment-related and responded directly to her claims of discrimination. The National Guard promised to permit her to reenlist "at her highest rank previously held"; pledged to re-employ her "as a military technician (dual status) at her highest pay grade previously held"; and pledged to ensure that NCO-2 would have no supervisory responsibility over (or other interaction with) her. The settlement agreement mentions no physical injury and provides petitioner no relief for any physical injury.

[*13]  In exchange for the National Guard's promises as set forth above, petitioner made several reciprocal promises.  She agreed to withdraw with prejudice the EEOC complaint that was the subject of the pending litigation as well as any other "administrative complaints, claims, and investigations."  She promised not to institute any claim against the National Guard under the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1866, or any other Federal statutory or constitutional provision.  And she agreed "to release the government, the Agency, and its employees * * * from any and all liability * * * resulting from or relating to * * * the subject matter of this settlement and * * * [her] employment with the Agency."  There is no suggestion in this release clause that petitioner had made, or was releasing the defendants from, any claim for damages on account of physical injury or physical sickness.  See Molina v. Commissioner, T.C. Memo. 2013-226, 106 T.C.M. (CCH) 371, 373-374.

In urging that the settlement payment qualifies for exclusion from gross income under section 104(a), petitioners note that several of the unfortunate incidents described above had a physical component.  These included NCO-3's "violent hug" and NCO-1's refusal to grant petitioner leave to seek medical treatment for a rash allegedly caused by exposure to toxic chemicals.  But in neither case did petitioner allege any actual physical injury or demand compensation for any phys-

**[\*14]** ical injury.  Rather, she cited these events as evidence of pregnancy-based discrimination, retaliation, and a hostile working environment.

The settlement agreement executed by the parties in June 2012 states quite clearly what claims the payment was made to settle--namely, the discrimination claims that were the subject of the pending EEOC litigation.  Looking more broadly at "the intent of the payor,"  see Longoria, 98 T.C.M. (CCH) at 15, we find it clear from petitioner's complaints and the ensuing litigation documents that the National Guard intended to settle, and did settle, claims based on sexual harassment, gender discrimination, and retaliation.  These documents nowhere refer to physical injury of any kind.  As respondent correctly points out, we have regularly held that damages for sexual harassment and gender discrimination claims do not qualify for the section 104(a)(2) exclusion.  McGowen v. Commissioner, T.C. Memo. 2011-186; Sanford v. Commissioner, T.C. Memo. 2008-158.

We have considerable sympathy for petitioner's position.  She endured great indignities in her workplace and undoubtedly suffered consequential emotional distress for a very long period.  But Congress has limited the section 104(a)(2) exclusion from gross income to damages received "on account of personal physical injuries or physical sickness," and Congress explicitly provided that "emotional distress shall not be treated as a physical injury or physical sickness."  "Dam-

[*15] ages received on account of emotional stress, even when resultant physical symptoms occur, are not excludable from income under section 104(a)(2)." Shelton v. Commissioner, T.C. Memo. 2009-116, 97 T.C.M. (CCH) 1592, 1594 (citing Hawkins v. Commissioner, T.C. Memo. 2005-149). Petitioner has not carried her burden of proving that any portion of the settlement proceeds was paid on account of "physical injury" as thus defined. We accordingly have no alternative but to conclude that the $220,252 payment that attorney Bowers reported on the Form 1099-MISC was includible in full in petitioners' gross income for 2012.

B.    Accuracy-Related Penalty

The Code imposes a 20% penalty on the portion of any underpayment of tax attributable to "[n]egligence or disregard of rules and regulations" or "[a]ny substantial understatement of income tax." Sec. 6662(a) and (b)(1) and (2). Negligence includes "any failure to make a reasonable attempt to comply" with the internal revenue laws, and the term "disregard" includes any "careless, reckless, or intentional disregard." Sec. 6662(c). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1).

Respondent determined a penalty of $13,070 attributable to two items of omitted income: the $220,252 settlement payment reported to petitioners on the

[*16] Form 1099-MISC and the $5,192 distribution reported to petitioners on the Form 1099-R.[5] Under section 7491(c) the Commissioner bears the burden of production with respect to the liability of any individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The tax deficiency we have sustained, $65,401, yields an understatement of income tax that easily exceeds both $5,000 and 10% of the tax required to be shown on petitioners' 2012 return. Respondent has thus carried his burden of showing a "substantial understatement" of income tax.

Respondent has also carried his burden of production with respect to negligence. Petitioner's settlement offer to the National Guard, presented by her attorney, specifically stated that the settlement proceeds would be subject to Federal and State income tax. Petitioner testified that attorney Bowers explicitly informed her of this fact. The Form 1099-MISC that attorney Bowers supplied to petitioners clearly stated that the $220,252 payment was required to be reported on their 2012 return. In neglecting to report the payment, petitioners disregarded all of this advice.

---

[5]The bulk of the distribution reported on the Form 1099-R appears to represent the $4,748 balance of the $225,000 settlement to which the parties agreed, which attorney Bowers paid directly into a retirement account on petitioner's behalf. See supra notes 2 and 4.

[*17] A taxpayer may avoid the accuracy-related penalty by showing that she acted with reasonable cause and in good faith. Sec. 6664(c)(1). Petitioner has the burden of showing reasonable cause and good faith. See Higbee, 116 T.C. at 446-447. This determination is made on a case-by-case basis, taking into account all relevant facts. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include (among other things) an honest misunderstanding of fact or law that is reasonable in light of all the circumstances, including the taxpayer's experience, knowledge, and education. The most impor-tant factor is the taxpayer's efforts to assess her correct tax liability. Ibid. A tax-payer may demonstrate reasonable cause and good faith by showing reliance on the advice of a competent tax professional. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner acknowledges that attorney Bowers originally advised her that the settlement proceeds would be taxable. But in their post-trial brief petitioners assert that they "thereafter sought the advice of counsel" and were advised that section 104(a) applied to shield those proceeds from taxation. Petitioner offered no testimony to this effect at trial. And there is no documentary evidence that petitioners sought or received, before filing their 2012 Federal income tax return, advice from a competent tax professional that the settlement proceeds were ex-

[*18] cludible from gross income under section 104(a)(2). We conclude that petitioners were not operating under "an honest misunderstanding of fact or law" in neglecting to report the settlement payment and did not make a good-faith effort to assess their correct 2012 tax liability. We accordingly hold that they are liable for an accuracy-related penalty.

To reflect the foregoing,

Decision will be entered for respondent.