T.C. Memo. 2017-191

UNITED STATES TAX COURT

LAURA STEPP AND KALEB STEPP, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13384-14.                    Filed September 27, 2017.

<u>Melissa A. Lipe</u>, for petitioners.

<u>Jamie M. Stipek</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  With respect to petitioners' Federal income tax for 2011, the

Internal Revenue Service (IRS or respondent) determined a deficiency of $34,117

and an accuracy-related penalty of $6,823 under section 6662(a).[1]  After

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule references are to the Tax
(continued...)

[*2] concessions,[2] the sole issue for decision is whether petitioners may exclude from gross income under section 104(a)(2), as damages received "on account of personal physical injuries or physical sickness", proceeds that Mrs. Stepp received under a settlement agreement with her employer.[3]

The Court concludes that the settlement proceeds compensated Mrs. Stepp for damages she suffered on account of disability-based discrimination, reprisal for engaging in protected Equal Employment Opportunity (EEO) activity, and an improper medical inquiry; no portion of the settlement proceeds represented

---

[1](...continued)
Court Rules of Practice and Procedure.

[2]Respondent concedes that petitioners are not liable for the sec. 6662(a) penalty for 2011. Petitioners did not dispute in their petition or otherwise the notice of deficiency's disallowance of their claimed education credits. It is accordingly deemed conceded. See Rule 34(b)(4). Petitioners requested earlier in this case that Kaleb be granted innocent spouse relief under sec. 6015. This Court instructed petitioners to amend their petition or file the administrative request with the IRS. Petitioners did neither and failed to raise this request at trial or in their briefs; it is also deemed conceded. See Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003) (holding that arguments not addressed in posttrial brief may be considered abandoned); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986) (finding concession by failure to argue).

[3]Respondent concedes that if this Court finds Mrs. Stepp's settlement proceeds to be included in petitioners' gross income for 2011, petitioners are entitled to an above-the-line deduction of $55,000--the amount paid directly to Mrs. Stepp's attorney for court costs and attorney's fees--because the lawsuit involved claims of unlawful discrimination. See sec. 62(a)(20). The notice of deficiency did not reflect any attorney's fees.

**[*3]** damages on account of personal injury or physical sickness. The Court holds

that petitioners may not exclude any portion of the settlement proceeds from gross

income.

FINDINGS OF FACT

The parties filed a stipulation of facts, a first supplemental stipulation of

facts, and a second supplemental stipulation of facts;[4] each was accompanied by

attached exhibits. The stipulated facts and exhibits are incorporated by this

reference. Petitioners resided in Texas when they petitioned this Court.

From 2004 through the year in issue, Mrs. Stepp worked for the

Transportation Security Administration (TSA).[5] She performed duties as a

baggage screener until January 2006 when she tore her left rotator cuff in an on-

the-job incident. Mrs. Stepp requested and received compensation for this injury

---

[4]The Court sealed the first and second supplemental stipulations of facts because of Mrs. Stepp's concern that she not violate the terms of her settlement agreement. Some of those facts are necessary to the Court's analysis. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965) (determining the nature of the claim by the terms of the settlement agreement), aff'g T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. 116, 126 (1994) (looking at the intent of the payor), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995). Mrs. Stepp's disclosure to this Court did not violate the terms of her settlement.

[5]TSA is one of many law enforcement agencies that make up the U.S. Department of Homeland Security.

**[*4]** under the worker's compensation program and returned to her baggage screening position in November of 2006.

During 2006 and 2007 TSA management at the airport where Mrs. Stepp worked began to involuntarily reassign female baggage screeners to passenger screening. Mrs. Stepp was informed on June 23, 2007, that she was among those reassigned. She contacted an EEO counselor on several occasions, protesting the gender-based reassignment, and raised the issue with her managers. She also made numerous requests to remain in baggage screening because of her shoulder injury and the resulting mobility difficulties she experienced. These requests were denied.

Mrs. Stepp requested that reasonable accommodations be made because the limited mobility from her prior injury affected her ability to properly perform some of the passenger screening duties. Before TSA denied her request, however, she became the target of reprisal for engaging in protected EEO activities and opposing discriminatory practices. Her supervisors created a hostile work environment that subjected Mrs. Stepp to emotional harm and undue stress.

On January 5, 2008, Mrs. Stepp filed a formal EEO complaint against TSA and the U.S. Department of Homeland Security under the administrative guidelines of the U.S. Equal Employment Opportunity Commission (EEOC). She

**[*5]** supplemented her initial complaint on January 12, 2010, adding claims of gender discrimination, disability discrimination, harassment, retaliation, and hostile work environment against TSA.[6]  Although the new claims included an assertion that she had been billed for an amount TSA was responsible for (in relation to "the case for * * * [her] work-related injury"), Mrs. Stepp did not allege that she had suffered any physical injury.

On March 24, 2011, the EEOC issued its decision.  The decision described each of Mrs. Stepp's claims as "broad claims of retaliation, gender discrimination, and disability discrimination in connection with * * * [her] involuntary reassignment in July 2007 from baggage screener to passenger screener."  None of the issues framed in the issues section included a claim for physical injury- or personal sickness-related damages.[7]

The decision concluded that TSA had subjected Mrs. Stepp to "a hostile work environment based on reprisal for engaging in protected EEO activities and/or opposing discriminatory practices."  It also found TSA's misclassification

---

[6]Mrs. Stepp's initial complaint was not introduced into the record.

[7]Each issue began with "[w]hether complainant was discriminated against on the basis of"; included one or more of the bases, disability (shoulder injury), sex (female), or reprisal for protected EEO activity; and concluded with a "when a certain event happened" statement.

[*6] of Mrs. Stepp's medical status and failure to timely process her request for reasonable accommodations to be part of a hostile work environment, which caused her emotional harm and stress. The decision further found that TSA subjected her to an improper medical inquiry in violation of 29 C.F.R. sec. 1630.[8] But other than finding that Mrs. Stepp had already received worker's compensation for her torn rotator cuff and that she alleged that she injured her other shoulder, the decision made no finding concerning any type of physical injury.

After the EEOC issued its decision, Mrs. Stepp reached a monetary settlement with TSA. The settlement agreement stated that she would withdraw with prejudice her EEOC complaint that was the subject of the EEOC decision as well as "any other pending informal or formal complaints filed with * * * [TSA] and allegations of hostile work environment, harassment, retaliatory harassment, gender and disability discrimination, and retaliation." In return, TSA would (among other things) pay Mrs. Stepp a lump sum of $121,500. The agreement recited her understanding that she bore sole responsibility for "compliance with all federal, state and local tax requirements" and "any federal or state income taxes she may owe as the result of her receipt of the lump sum settlement amount."

---

[8]The decision found for TSA on all other claims.

**[\*7]**  Mrs. Stepp and TSA executed this settlement agreement in early August 2011, resolving all issues between them, and she filed a motion to dismiss the EEOC complaint.  TSA wired $55,000[9] to Mrs. Stepp's attorney and separately wired $66,500 directly to a bank account held jointly by petitioners.  The settlement agreement made no reference to "physical injury" or "personal illness".

Petitioners timely filed their Form 1040, U.S. Individual Income Tax Return, for 2011.  Before preparing this return, they received from the U.S. Department of Homeland Security a Form 1099-MISC, Miscellaneous Income, reporting a $121,500 payment from the litigation settlement.  Petitioners reported the settlement income on their return but deducted $55,000 as "DIRECT PAYMENT TO OTHERS" and $66,500 as "PERSONAL INJURY REIMBURSEMENT", effectively excluding the settlement proceeds from their gross income.  After a document-matching examination revealed this discrepancy, the IRS issued petitioners a timely notice of deficiency for 2011, determining that the $121,500 payment should have been included in gross income.  Petitioners timely petitioned this Court, contending that the $121,500 payment was excludable from gross income under section 104(a)(2).

---

[9]This represented $5,000 in court fees and $50,000 in attorney's fees.

**[*8]**                                    OPINION

The IRS' determinations in a notice of deficiency are generally presumed correct though the taxpayer can rebut this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer bears the burden of proving her entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. In certain circumstances the burden of proof on factual issues may shift to respondent. See sec. 7491(a); Rule 142(a)(1). Petitioners do not contend that this provision applies here, and they thus bear the burden of proof.

Section 61(a) defines "gross income" as "all income from whatever source derived". This definition has broad scope, and exclusions from gross income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940). Litigation settlement proceeds constitute gross income unless the taxpayer proves that the proceeds fall within a specific statutory exclusion. Commissioner v. Schleier, 515 U.S. at 328-337; Save v. Commissioner, T.C. Memo. 2009-209.

**[*9]** The exclusion from gross income upon which petitioners rely appears in section 104(a)(2). It provides that gross income does not include "the amount of any damages * * * received (whether by suit or agreement * * *) on account of personal physical injuries or physical sickness." Congress intended this exclusion to cover damages that flow from a physical injury or physical sickness. See H.R. Conf. Rept. No. 104-737, at 301 (1996), 1996-3 C.B. 741, 1041. For this purpose, "emotional distress shall not be treated as a physical injury or physical sickness," sec. 104(a) (penultimate sentence), nor shall "mental anguish, humiliation and embarrassment", Shaltz v. Commissioner, T.C. Memo. 2003-173.

When damages are received under a settlement agreement, the nature of the claim that was the actual basis for the settlement determines whether the damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). "The nature of the claim" is typically determined by reference to the terms of the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33. The "key question" is: "In lieu of what were the damages awarded?". Robinson v. Commissioner, 102 T.C. 116, 126 (1994) (quoting Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944), aff'g 1 T.C. 952 (1943)), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995). If the agreement does not explicitly

**[\*10]** state which claims the payment was made to settle, the "dominant reason for [the payor's] making the payment" is critical.  Green v. Commissioner, 507 F.3d 857, 868 (5th Cir. 2007), aff'g T.C. Memo. 2005-250.

The intent of the payor is determined by taking into consideration all of the facts and circumstances, including the amount paid, the circumstances leading to the settlement, and the allegations in the injured party's complaint.  Id. at 868; Bent v. Commissioner, 87 T.C. 236, 245 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987). "[T]he nature of underlying claims cannot be determined from a general release that is broad and inclusive."  Ahmed v. Commissioner, T.C. Memo. 2011-295, 102 T.C.M. (CCH) 607, 608 (2011), aff'd, 498 F. App'x (11th Cir. 2012).  And where there is a general release but no allocation of settlement proceeds among various claims, this Court has held that all settlement proceeds are includible in gross income.  See Green v. Commissioner, T.C. Memo. 2014-23, at \*11; Evans v. Commissioner, T.C. Memo. 1980-142.

Mrs. Stepp's complaints against TSA were expressed in a variety of formats over several years from 2007 to 2011.  These included informal counseling with TSA EEO counselors, formal and informal internal complaints, a formal EEOC proceeding that entailed extensive discovery, and a settlement offer from TSA that Mrs. Stepp accepted.  At every stage of these proceedings, Mrs. Stepp uniformly

**[*11]** alleged as the bases for her complaints some combination of disability- or gender-based discrimination and reprisal for protected EEO activity. Mrs. Stepp points to the EEOC decision discussing her shoulder injuries as proof that the nature of her claims involved personal physical injury. But the EEOC opinion's discussion of her left shoulder injury--and her alleged right shoulder injury[10]--was included to establish that she was "disabled" and therefore entitled to recover under the standards of the ADA Amendments Act of 2008.[11]

The settlement agreement states that it is "in full and final satisfaction of all claims against the Agency". The nonpecuniary relief she secured was employment related and responded directly to her claims of discrimination. TSA promised to reassign Mrs. Stepp to baggage screening for a certain period, expunge any disciplinary marks relating to the EEOC case, and approve a certain quantity of leave that Mrs. Stepp would request. The settlement agreement mentions no personal injury or physical sickness and provides her no relief for such an injury or sickness.

---

[10]Petitioners did not introduce evidence proving that Mrs. Stepp raised a personal injury claim against TSA with respect to her right shoulder.

[11]In contrast, the EEOC decision speaks in terms of "emotional harm" and "financial harm" Mrs. Stepp suffered as a result of the hostile TSA actions.

**[*12]** In exchange for TSA's promises as set forth above, Mrs. Stepp made several reciprocal promises. She agreed to withdraw with prejudice the EEOC complaint that was the subject of the pending litigation as well as "any other pending informal or formal complaints filed with * * * [TSA] and allegations of hostile work environment, harassment, retaliatory harassment, gender and disability discrimination, and retaliation." She promised not to institute any claim against TSA under the Civil Rights Act of 1964, the Rehabilitation Act of 1973, the Age Discrimination in Employment Act, or any other law, regulation or directive. And she agreed to "release[] the United States, the Agency, and its employees * * * from any employment discrimination claims or liabilities * * * that were or could have been raised".

The settlement agreement executed by the parties in August 2011 stated quite clearly what claims the payment was made to settle--namely, the claims of discrimination, harassment, retaliation, and hostile work environment that were the subject of the EEOC litigation. Looking more broadly at the dominant intent of the payor, the Court finds it clear from the record that TSA's dominant reason behind this agreement was to settle the EEOC litigation. The settlement documents nowhere refer to physical injury of any kind. And there is no suggestion in the broad and inclusive, general release clause that she had made, or

**[\*13]** was releasing the defendants from, any claim for damages on account of physical injury or physical sickness.[12]

This Court has considerable sympathy for Mrs. Stepp's position. She endured great indignities in her workplace and undoubtedly suffered consequential emotional distress for a very long period. But Congress has limited the section 104(a)(2) exclusion from gross income to damages received "on account of personal physical injuries or physical sickness", and Congress explicitly provided that "emotional distress shall not be treated as a physical injury or physical sickness." "Damages received on account of emotional stress, even when resultant physical symptoms occur, are not excluded from income under section 104(a)(2)." Shelton v. Commissioner, T.C. Memo. 2009-116, 97 T.C.M. (CCH) 1592, 1594 (2009) (citing Hawkins v. Commissioner, T.C. Memo. 2005-149). Petitioners have not carried their burden of proving that any portion of the settlement proceeds was paid on account of "physical injury" thus defined. The Court accordingly has no alternative but to conclude that the $121,500 payment reported

---

[12]Even assuming arguendo that some portion of TSA's settlement payment was intended by TSA to compensate Mrs. Stepp for her shoulder injuries, she has not shown the extent to which the settlement proceeds were allocated among her many claims.

**[*14]** on the Form 1099-MISC was includible in full in petitioners' gross income for 2012.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.