# United States Tax Court

T.C. Memo. 2022-111

BRYANT D. TILLMAN-KELLY AND MELANIE TILLMAN-KELLY,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 6127-20.                                  Filed November 21, 2022.

————

Bryant D. Tillman-Kelly and Melanie Tillman-Kelly, pro se.

*Monica I. Cendejas*, for respondent.

MEMORANDUM OPINION

URDA, *Judge*: Petitioners, Bryant and Melanie Tillman-Kelly, challenge the Internal Revenue Service's (IRS) determination of a deficiency of $67,322 in their 2017 federal income tax.[1] Mr. Tillman-Kelly received $230,671 to settle an Illinois state court action against Chicago State University (CSU), its board of trustees, and Dr. Justin Akujieze (Defendants) in 2017. Mr. Tillman-Kelly alleged that the Defendants had retaliated against him for reporting the misuse of grant funds, resulting in "emotional distress, humiliation, and lost income." The sole remaining question (in the wake of a stipulation of settled issues) is whether the settlement proceeds should be excluded from the Tillman-Kellys' gross income under section 104(a)(2), which shields damages received "on account of personal physical injuries or physical

———

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. or I.R.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

[*2] sickness" from inclusion in gross income. We conclude that the settlement proceeds do not qualify for this exclusion and will sustain the deficiency determination, subject to certain concessions made by the Commissioner.

## *Background*

The parties have moved to submit this case for decision without trial under Rule 122. All facts relevant to this case have been stipulated or otherwise included in the record. *See* Rule 122(a). The Tillman-Kellys lived in California when they timely filed their petition.

### I. *Mr. Tillman-Kelly's Lawsuit*

In September 2009 CSU hired Mr. Tillman-Kelly as project director of a federal grant that CSU had received. Mr. Tillman-Kelly reported directly to Dr. Akujieze, a dean at CSU, and Robert Warner, the dean's executive assistant. A few months into his employment Mr. Tillman-Kelly expressed concerns to the U.S. Department of Education and CSU's Ethics Office that certain grant funds were being misappropriated. On June 17, 2010, CSU terminated Mr. Tillman-Kelly's employment.

Mr. Tillman-Kelly thereafter filed suit against the Defendants in Illinois state court, alleging that they retaliated against him for his complaints of misuse of funds.[2] He stated that he "was subjected to humiliation, isolation, harsher discipline and different and comparatively more negative terms and standards of employment, [than] other university employees, denial of benefits, demotions, and ultimately, termination." Specifically, Mr. Tillman-Kelly asserted that Dr. Akujieze threatened to "do what he had to do" in response to Mr. Tillman-Kelly's ethics complaints, which (again, according to the complaint) consisted primarily of eliminating Mr. Tillman-Kelly's job responsibilities culminating with his termination.

Mr. Tillman-Kelly contended that these actions violated Illinois state whistleblower protections and sought "damages included but not limited to emotional distress and humiliation and lost income and

---

[2] Mr. Tillman-Kelly originally had filed suit against CSU and its board of trustees in the U.S. District Court for the Northern District of Illinois, but he moved to dismiss that action a few months later.

[*3] benefits." His complaint did not allege that he suffered any physical injuries, nor did he seek compensation for physical injuries.

Mr. Tillman-Kelly and the Defendants settled the state court case in 2017. Under the terms of the settlement agreement, Mr. Tillman-Kelly received a payment of $230,671 in exchange for ending his suit. The settlement agreement described this payment as being for "alleged non-wage injuries, as non-economic emotional distress damages."

## II. *IRS Examination and Notice of Deficiency*

Although the Tillman-Kellys did not include the settlement payment on their 2017 federal income tax return, CSU reported it to the IRS on Form 1099-MISC, Miscellaneous Income. The IRS later issued a notice of deficiency to the Tillman-Kellys, determining a deficiency of $67,322 and an accuracy-related penalty of $13,423.[3] As most relevant here, the notice adjusted the Tillman-Kellys' gross income to reflect receipt of the CSU settlement payment.

## *Discussion*

## I. *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Merkel v. Commissioner*, 192 F.3d 844, 852 (9th Cir. 1999), *aff'g* 109 T.C. 463 (1997). The U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this case would ordinarily lie, *see* I.R.C. § 7482(b)(1)(A), has held that that the Commissioner must establish "some evidentiary foundation" linking the taxpayer to an alleged income-producing activity before the presumption of correctness attaches to the deficiency determination, *Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977). Once the Commissioner has established such a foundation, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations

---

[3] The deficiency determined in the notice reflected several other adjustments to the Tillman-Kellys' income, but those adjustments are not in dispute. We further note that the Commissioner has conceded the accuracy-related penalty determined in the notice.

**[*4]** are arbitrary or erroneous. *See Hardy v. Commissioner*, 181 F.3d 1002, 1004–05 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97.

The Tillman-Kellys have stipulated that they received the settlement proceeds at issue, and the Commissioner has established an evidentiary foundation linking them to the unreported income. The Commissioner's determination is accordingly presumed correct, and the Tillman-Kellys have the burden of proving that the determination is erroneous. *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. at 115.[4]

II.    *Analysis*

A.    *Legal Background*

Gross income includes all income from whatever source derived. *See* I.R.C. § 61(a); *see also Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955); *Helvering v. Clifford*, 309 U.S. 331, 334 (1940). Exclusions from gross income "must be narrowly construed." *Commissioner v. Schleier*, 515 U.S. 323, 328 (1995) (quoting *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring in the judgment)).

Settlement proceeds constitute gross income unless the taxpayer proves that such proceeds fall within a specific statutory exception. *See id.*; *Save v. Commissioner*, T.C. Memo. 2009-209, 2009 WL 2950838, at *1. Section 104(a)(2) supplies one such exception, excluding from gross income "any damages (other than punitive damages) received (whether by suit or agreement . . . ) on account of personal physical injuries or physical sickness."

For the purposes of this exception, "emotional distress shall not be treated as a physical injury or physical sickness." I.R.C. § 104(a) (flush text).[5] Treasury Regulation § 1.104-1(c)(1) further explains that "[e]motional distress is not considered a physical injury or physical sickness" unless it is "attributable to a physical injury or physical sickness." *See Rivera v. Baker W., Inc.*, 430 F.3d 1253, 1256 (9th

---

[4] We note that Mr. Tillman-Kelly did not seek a shift in the burden of proof under section 7491(a) and that the submission of a case under Rule 122(a) does not shift the burden of proof. *See* Rule 122(b).

[5] The flush text of section 104(a) provides that the general rule against exclusion of emotional-distress damages does not apply to "the amount paid for medical care" attributable to emotional distress. The Tillman-Kellys neither raised this issue nor introduced evidence regarding amounts for any medical care.

**[\*5]** Cir. 2005) ("[O]nly damages for physical injuries or sickness, and not damages for emotional distress, [are] excluded from . . . income."); *see also Barbato v. Commissioner*, T.C. Memo. 2016-23, at \*7–9 (finding that damages for emotional distress attributable to workplace discrimination and not a physical injury or physical sickness do not fall within the exclusion from income granted by section 104(a)(2)); *Hawkins v. Commissioner*, T.C. Memo. 2007-286, 2007 WL 2736219, at \*2 ("In this context, the terms 'physical injury' and 'physical sickness' do not include emotional distress . . . ."), *aff'd*, 386 F. App'x 697 (9th Cir. 2010).

"For a taxpayer to fall within [the section 104(a)(2)] exclusion, he must show that there is 'a direct causal link between the damages and the personal injuries sustained.'" *Doyle v. Commissioner*, T.C. Memo. 2019-8, at \*11 (quoting *Rivera*, 430 F.3d at 1257); *see also Blum v. Commissioner*, T.C. Memo. 2021-18, at \*7, *aff'd*, No. 21-71113, 2022 WL 1797334 (9th Cir. June 2, 2022). When a taxpayer receives damages pursuant to a settlement agreement, the nature of the claim that was the actual basis for the settlement controls whether the damages are excludable under section 104(a)(2). *See Burke*, 504 U.S. at 237; *see also Bagley v. Commissioner*, 105 T.C. 396, 406 (1995) ("[T]he critical question is, in lieu of what was the settlement amount paid[?]"), *aff'd*, 121 F.3d 393 (8th Cir. 1997); *Blum*, T.C. Memo. 2021-18, at \*8; *Smith v. Commissioner*, T.C. Memo. 2018-127, at \*18, *aff'd without published opinion*, No. 19-1050, 2020 WL 8368297 (D.C. Cir. 2020).

The nature of the claim is typically determined by looking to "the underlying agreement to determine whether it expressly states that the damages compensate for 'personal physical injuries or physical sickness' under § 104(a)(2)." *Rivera*, 430 F.3d at 1257; *see also Ghadiri-Asli v. Commissioner*, T.C. Memo. 2019-142, at \*38, *aff'd sub nom. Najle-Rahim v. Commissioner*, No. 20-72031, 2022 WL 2869776 (9th Cir. July 21, 2022). Should an agreement fail to answer the question, we inquire as to "the intent of the payor." *Devine v. Commissioner*, T.C. Memo. 2017-111, at \*11 (quoting *Longoria v. Commissioner*, T.C. Memo. 2009-162, 2009 WL 1905040, at \*7); *see also Rivera*, 430 F.3d at 1257; *Knuckles v. Commissioner*, 349 F.2d 610, 613 (10th Cir. 1965), *aff'g* T.C. Memo. 1964-33; *Ahmed v. Commissioner*, T.C. Memo. 2011-295, 2011 WL 6440130, at \*3, *aff'd*, 498 F. App'x 919 (11th Cir. 2012).

The payor's intent may be discerned by taking into account "all the facts and circumstances of the case," including the amount paid, the allegations in the injured party's complaint, and the factual circumstances that led to the agreement. *Rivera*, 430 F.3d at 1257

[*6] (quoting *Allum v. Commissioner*, T.C. Memo. 2005-177, 2005 WL 1692488, at *4, *aff'd*, 231 F. App'x 550 (9th Cir. 2007)); *see Green v. Commissioner*, 507 F.3d 857, 868 (5th Cir. 2007), *aff'g* T.C. Memo. 2005-250; *see also Bent v. Commissioner*, 87 T.C. 236, 245 (1986), *aff'd*, 835 F.2d 67 (3d Cir. 1987). "Ultimately, the character of the payment hinges on the payor's dominant reason for making the payment." *Green*, 507 F.3d at 868. "[T]he nature of underlying claims cannot be determined from a general release [of claims] that is broad and inclusive." *Ahmed v. Commissioner*, 2011 WL 6440130, at *3.

### B. *Mr. Tillman-Kelly's Settlement Payment*

The settlement agreement establishes that the payment is not excludable under section 104(a)(2). The parties expressly agreed that the $230,671 payment to Mr. Tillman-Kelly was for "non-wage injuries, as non-economic emotional distress damages." The parties do not reference physical injuries or sickness in the agreement, much less tie the settlement payment to any such physical injuries or sickness.

The Tillman-Kellys respond that the retaliation claim was actually rooted in a heated altercation between Mr. Tillman-Kelly and Mr. Warner, which resulted in physical injury from the slamming of a door, and that the settlement proceeds were meant to compensate Mr. Tillman-Kelly for that injury. The Tillman-Kellys assert that their treatment of the proceeds was thus consistent with IRS Publication 4345, which states in relevant part that "proceeds you receive for emotional distress or mental anguish attributable to a personal physical injury or physical sickness are treated the same as proceeds received for Personal physical injuries or physical sickness." I.R.S. Publication 4345 (Revised Nov. 2022), Settlements—Taxability, at 1.

The settlement agreement belies the Tillman-Kellys' position. In that agreement, the parties characterized the payment as one for "emotional distress damages" and did not reference any physical injury whatsoever.

Even if we were to expand our focus beyond the settlement agreement, the Tillman-Kellys would fare no better. As an initial matter, Mr. Tillman-Kelly's claim against the Defendants does not relate to compensation for physical injuries. The state court claim alleges violation of an Illinois whistleblower statute, describing a retaliatory campaign involving improper removal of job responsibilities

**[\*7]** and ultimately termination, not physical injury. Nor did Mr. Tillman-Kelly's complaint seek damages for physical injury, instead pursuing damages for "emotional distress and humiliation and lost income and benefits."

The only clear reference in the record to any physical injury comes in Mr. Tillman-Kelly's responses to interrogatories in the state court action.[6] In the context of a lengthy description of the events at issue and his complaints, Mr. Tillman-Kelly stated he reported to CSU ethics officials an incident in which Mr. Warner "slammed a door on [him] injuring [him]." Mr. Tillman-Kelly, however, did not identify this purported injury in response to an interrogatory asking for "the basis for any damages you claim to be entitled to, including the compensatory and punitive damages articulated in your Prayer for Relief." Nor does the record explain the precise nature or extent of Mr. Tillman-Kelly's purported physical injury from the door.

In short, we return to the plain text of the settlement agreement that the payment was made for "alleged non-wage injuries, as non-economic emotional distress damages." This text is clear on its face, but even if there were some doubt, the nature of the state court litigation supports the conclusion that the dominant reason for the payment was to compensate for emotional distress and was altogether unrelated to physical injury.

III.  *Conclusion*

In sum, we hold that the settlement payment is not excludable from Mr. Tillman-Kelly's gross income under section 104(a)(2) for tax year 2017. We accordingly sustain the IRS's deficiency determination, subject to the Commissioner's concessions.

To reflect the foregoing,

*Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty under section 6662(a).*

---

[6] We note that during his deposition in the state court litigation, Mr. Tillman-Kelly referenced a hospital visit in August 2010 in response to panic attacks. According to Mr. Tillman-Kelly's own testimony, however, the hospital sent him home because "physically nothing was wrong with [him]."